CAPITAL HOLDING CORPORATION,
Movant,

v.

Larry L. BAILEY and Linda
Bailey, Respondents.

Larry L. BAILEY and Linda
Bailey, Movants,

v.

CAPITAL HOLDING CORPORATION,
Respondent.

Nos. 93–SC–409–DG, 93–SC–428–DG.

Supreme Court of Kentucky.

March 24, 1994.

Lively M. Wilson, Judith A. Villines, Stites and Harbison, Louisville, for Capital Holding.

J. Michael Poole, Bruce Garrett Anderson, J. Michael Poole & Associates, Louisville, for Baileys.

LEIBSON, Justice.

This case raises complex questions regarding when tort claims accrue for exposing the plaintiff to potentially harmful asbestos-related disease, and whether damages may be recovered when there is no present manifestation of a diseased condition.

The complaint alleged theories of liability based on negligence and outrageous conduct in exposing plaintiff to asbestos, causing increased risk of future injury or disease and severe emotional distress from the fear of developing cancer. It was dismissed with prejudice on summary judgment for the defendant, but the final order further provided that such dismissal "does not bar the Plaintiffs at any time hereinafter from filing any claim against Defendant for damages resulting from an injury or disease related to the asbestos exposure from which their Complaint herein arises." The effect of this order is to preserve plaintiffs' rights to further pursue tort litigation if and when a "disease related to the asbestos exposure" should manifest itself.

■ Our review of a summary judgment is limited to whether the facts alleged by the plaintiffs and the evidence of record supporting their claim at the time of dismissal, together with all reasonable inferences therefrom, fail to support a claim. *See Paintsville Hosp. Co. v. Rose*, Ky., 683 S.W.2d 255 (1985); *Steelvest, Inc. v. Scansteel Service Ctr.*, Ky., 807 S.W.2d 476 (1991). Thus viewed, the evidence is as follows.

Between August and November of 1987, plaintiff, Larry Bailey, working for his wife's construction company, was engaged in removing pipes and ducts from the basement of the Commonwealth Building, in Louisville,

Kentucky. The Commonwealth Building was owned by the defendant, Capital Holding Corporation.[1] The defendant was aware of asbestos in the basement of their building, and, according to Bailey, either consciously aware of or recklessly indifferent to its dangerous propensities. Defendant had previously received a report of an analysis and inspection indicating asbestos contamination in the basement and engaged another company to attempt to remove or encapsulate areas that appeared to be "friable." Without telling Bailey of the asbestos, he was hired in August 1987 to remove certain unused sewer pipes from the basement, and he also removed certain steam pipes which he later found out were covered with molded asbestos insulation. According to Bailey, he went home each day covered with asbestos dust, albeit unknown to him, thus bringing his wife, Linda Bailey, into direct contact with the asbestos dust, and further contaminating their home with asbestos.

In March 1989 Bailey learned for the first time, from the former superintendent of the Commonwealth Building, that the area where Bailey had been working was contaminated with asbestos. Upon learning that he had been thus exposed to a potentially cancer-producing agent, he went immediately to Dr. William Anderson, a pulmonary specialist, for a physical examination, x-rays and testing. Dr. Anderson determined that Bailey had no present abnormality or manifestation of disease, but further concluded, and so testified, that Bailey has a slightly increased risk of developing asbestosis (a type of pneumoconiosis), and a significantly increased risk of developing mesothelioma (a painful and deadly form of cancer of the membranes surrounding the lungs). At the time of his deposition, Dr. Anderson could not quantify the enhanced risk of Bailey contracting mesothelioma.

After Dr. Anderson examined Bailey, but before his deposition, plaintiffs discovered the presence of two types of asbestos fibers in addition to the one involved in the medical

1. The position of the Baileys as appellants has been shifted around somewhat by the Court of Appeals' decision. To avoid the confusion which would follow from the terms "appellant" and "appellee," we will refer to the parties by their status at the trial level where Larry and Linda Bailey, his wife, were plaintiffs and Capital Holding was the defendant.

history at the time of Bailey's medical examination. When Dr. Anderson was deposed he testified that one of these types had a higher risk of developing mesothelioma than the type upon which he based his testimony.

In the trial court the plaintiffs contended the inhalation of the asbestos fibers, standing alone, constituted physical contact sufficient to allow recovery of damages for (1) increased risk of future injury or disease, (2) present and future mental suffering and emotional distress from the fear of developing cancer, and (3) decontamination of their home.[2]

The Baileys' complaint alleged two different theories of tort liability, negligence and outrageous conduct causing severe emotional distress. In paragraph 9 it seeks damages based on these theories, either collectively or alternatively, for "increased future risk in contracting various forms of cancer and an accompanying fear of contracting cancer in the future."

In the opinion rendered with the summary judgment, the trial court assumed certain "uncontested operative facts." They are:

"1) Plaintiffs were exposed to asbestos, while plaintiff, Larry L. Bailey, was in the employ of defendant, and they have credible evidence to show they have a risk of developing asbestosis or mesothelioma. . . .

2) Neither plaintiff suffers from any present physical injury or illness caused by the conduct of defendant.

3) Plaintiff, Larry L. Bailey, worries that he has contracted a deadly asbestos-related disease; this worrying has drained him both physically and emotionally; and, the resulting stress has caused Mr. Bailey to develop a drinking problem he never had previously, which has caused him to seek professional care.

4) Plaintiff, Linda Bailey, through being in close proximity to her husband, has also been exposed to asbestos which has caused her extreme emotional distress because this exposure coincided in time with her pregnancy."[3]

Based on these "operative facts" the trial court concluded summary judgment was appropriate because:

"In the case at bar, plaintiffs have neither an asbestos-related injury nor any x-ray manifestation of a disease."

The original opinion from the Court of Appeals, which was later modified as we will discuss, dealt first with the negligence concept and then with the tort of outrageous conduct causing severe emotional distress.

Turning first to the negligence issues, the Court of Appeals agreed with plaintiffs that the controlling case is *Davis v. Graviss*, Ky., 672 S.W.2d 928 (1984), but rejected their claim that *Davis* allowed a cause of action in present circumstances, stating:

"It is apparent from a reading of *Davis* that the [Supreme] Court recognized only the right to compensation for an increased likelihood of future complications arising from a realized injury other than a mere contact. The [Supreme] Court made this clear when it framed the issue as involving the plaintiff's 'right to compensation *for an injury causing an increased risk of future harm.*' *Id.* at 930. . . . In this jurisdiction a present physical injury is a prerequisite to recovery for an increased risk of future harm."

However, the Court of Appeals' opinion agreed with the plaintiffs' contention that the trial court had "improperly dismissed their claim for compensation for the emotional distress suffered by them as a result of the [defendant's] negligence in failing to warn of the presence of asbestos." The Court of Appeals based its decision on cases ("most recently" *Deutsch v. Shein*, Ky., 597 S.W.2d 141 (1980)) sustaining recovery for fright or mental pain and suffering "where there has been some negligent physical contact or impact with the body of the victim, even though

---

**2.** The plaintiffs' claim for expenses in connection with decontamination of their home was dismissed on summary judgment in the trial court, and the Court of Appeals affirmed, stating this claim rested solely on the violation of a statute (KRS 224.20–320) enacted too late to support this cause of action. The Baileys' motion for discretionary review did not include this issue, so we do not consider it.

**3.** She later delivered a child who has no sign of any asbestos-related disease.

no actual physical injury appears to have occurred." The Court of Appeals then stated:

"The theoretical basis for allowing recovery where there has been impact but no actual physical injury is not perfectly consistent, with the courts, at times, merely dispensing with any requirement of a physical injury while at other times seeming to consider the impact itself, however slight, a physical injury."

The Court of Appeals concluded:

"... the trial court erred in dismissing the [negligence] claims for mental anguish on the ground that no impairment of ability to function or manifestation of disease from exposure to asbestos could be shown. The contact with the asbestos itself is sufficient to support this claim provided, of course, that the other elements necessary to establish a tort in negligence are shown by each of the appellants."

It is from this ruling on the negligence theory that the defendant, Capital Holding, filed a Motion for Discretionary Review seeking relief in our Court.

Turning next to the "tort of outrageous conduct," the Court of Appeals cited our case of *Craft v. Rice*, Ky., 671 S.W.2d 247 (1984), recognizing this tort and adopting Sec. 46 of the *Restatement (Second) of Torts* (1965), and concluded that, without regard to whether there is any present evidence or manifestation of an asbestos-related disease, the operative facts, if proved, will sustain a cause of action.

The Court of Appeals stated:

"The elements of this tort as expressed in § 46 of the Restatement are intentionally or recklessly causing severe emotional distress to another by extreme and outrageous conduct."

As to what conduct constitutes acting "recklessly" for purposes of this tort, the Court of Appeals cited Comment i. to § 46 of the Restatement: a person "acts recklessly" when acting "in deliberate disregard of a high degree of probability that the emotional distress will follow."

The Court of Appeals then concluded:

"The parties do not appear to dispute that the [defendant] was under a duty to warn Mr. Bailey of the presence of asbestos. At the same time, as the record stands, it could be inferred that the [defendant] intentionally failed to do so. It, likewise, could be inferred that the [defendant] should have realized that there was a high probability that severe emotional distress would follow from Mr. Bailey's unwitting exposure to such a dangerous substance as asbestos. We cannot say as a matter of law that if the [defendant], with full knowledge of the danger, intentionally failed to warn Mr. Bailey or his employer of the presence of the asbestos, this would not constitute outrageous conduct. The known effects of exposure to this substance are such that we regard it as 'utterly intolerable in a civilized community,' *Restatement (Second) of Torts*, § 46, comment d at p. 73 (1965), that one having a duty to warn of its presence would deliberately fail to do so."

Thus the Court of Appeals concluded the operative facts, if proved, would support a claim for outrageous conduct causing severe emotional distress.

We feel certain that the defendant, Capital Holding, would have appealed this ruling as well as the Court of Appeals' ruling on the negligence aspect of the case, but for the fact that the Capital Holding succeeded, on Petition for Rehearing, in persuading the Court of Appeals to withdraw on procedural grounds this portion of its opinion pertaining to outrageous misconduct.

On Petition for Rehearing Capital Holding claimed that the plaintiffs' argument regarding liability for the tort of outrageous conduct was not preserved for appellate review because the issue was not adequately presented in the CR 76.03 prehearing statement. The Court of Appeals agreed, citing CR 76.03(6) and *Howard v. Magoffin County*, Ky. App., 734 S.W.2d 499 (1987), withdrew the portion of its opinion discussing the tort of outrageous conduct, and affirmed the trial court's summary judgment in this respect. In this state of affairs, the plaintiffs moved for discretionary review in our Court claiming there is no substance to the alleged fail-

ure to comply with CR 76.03(6) and the Court of Appeals improperly denied relief on grounds of procedural default.

■ For reasons to be stated, we have concluded: (1) on liability for negligence, the Court of Appeals should have sustained the decision of the trial court granting summary judgment to the defendant because no cause of action had yet accrued to sustain an award of damages for either increased risk of future harm from an asbestos-related disease or mental suffering or emotional distress from fear of such disease; (2) on liability for outrageous conduct causing severe emotional distress, the original opinion of the Court of Appeals properly reversed the decision of the trial court granting the motion of the defendant for summary judgment; and (3) the Court of Appeals then erred when it modified its original opinion by withdrawing the portion of the opinion regarding outrageous misconduct on procedural grounds. Thus the summary judgment of the trial court will be affirmed as to the negligence claims and reversed as to the outrageous conduct claims.

## I. NEGLIGENCE

Any discussion of liability based on exposing a plaintiff to the potentially harmful effects of an asbestos-related disease due to negligent conduct or failure to warn must center around three cases: *Louisville Trust Co. v. Johns–Manville Products*, Ky., 580 S.W.2d 497 (1979); *Deutsch v. Shein*, Ky., 597 S.W.2d 141 (1980); and *Davis v. Graviss*, Ky., 672 S.W.2d 928 (1984).

In *Louisville Trust Co. v. Johns–Manville Products, supra*, the plaintiff died from "lung cancer ['mesothelioma'], caused by breathing asbestos dust and fibers," and his estate sued Johns–Manville on "a theory of products liability arising from an alleged failure to adequately warn of known dangers associated with the inhalation of asbestos dust." 580 S.W.2d at 498. The issue was whether "to extend the discovery rule of our medical malpractice case to tort actions for injury resulting from a latent disease caused by exposure to harmful substance." *Id.* at 499. We held "that when an injury does not manifest itself immediately, the cause of action should not accrue when the injury was initial-

ly inflicted, but when the plaintiff knew or should have known that he had been injured by the conduct of the tortfeasor." *Id.* at 500. The portion of the *Johns–Manville* opinion which is critical for present purposes is a quotation from *Saylor v. Hall*, Ky., 497 S.W.2d 218, 225 (1973) incorporated into the opinion at 580 S.W.2d at 500:

"A cause of action does not exist until the conduct causes injury that produces loss or damage."

Thus we recognized that with a substance capable of causing cancer, just as with any other defective product, no cause of action accrues until the potentially harmful exposure actually "causes injury that produces loss or damage."

■ This rule is fair to both plaintiff and defendant: it protects the plaintiff from a statute of limitations cutting off a cause of action before it accrues, and it affords the defendant the benefit of the traditional principle that for negligent conduct to be actionable it must not only create an unreasonable risk of harm but it must be a substantial factor in causing a harmful result. *See Restatement (Second) of Torts*, Legal Cause, §§ 430–433. Negligent conduct that causes no harm is not actionable.

In *Deutsch v. Shein, supra*, we addressed the so-called "physical contact" requirement in negligence cases. More particularly, we addressed whether the harm resulting from negligent conduct must be produced *directly* by the physical contact, or only *indirectly*. We cited earlier cases noting that proof of physical contact has a "corroborating purpose" and that such purpose is served so long as there is some "minimum" "amount of physical contact or injury. Contact, however slight, trifling, or trivial, will support a cause of action." 597 S.W.2d at 146. We cite the *Restatement (Second) of Torts*, § 431, which, in the process of analyzing the nature of proximate cause states:

"(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm."

Thus, in *Deutsch v. Shein*, we recognized the right to recover for negligently exposing a

pregnant plaintiff to potentially harmful x-rays, although there was no proof the x-rays were actually harmful, because such exposure caused harm *indirectly* in that it was sufficient to cause the plaintiff to undergo an abortion.

*Deutsch v. Shein* does not stand for damages for fear in the absence of injury. The abortion and loss of the baby were substantial injury. Its significance is that harm resulting indirectly as well as directly is compensable so long as the negligent act was a substantial factor resulting in the harm. The trial court's opinion accompanying its summary judgment order in the present case is similar in tone in that it refers to other asbestos exposure cases where the trial court had "previously denied motions for summary judgment and motions for directed verdicts where claimants had x-ray evidence of asbestosis, pleural thickening, or pleural plaque. In those cases, the court interpreted the x-ray evidence to be an 'injury' even though claimants failed to show any actual impairment...." The trial court drew the line here, not at plaintiff's failure to prove the asbestos exposure had caused cancer, but because the plaintiff failed to prove that the asbestos exposure had as yet caused any harmful change of any nature. In effect, the trial court was stating that had there been proof of any such harmful change, it would have triggered the negligence claim and supported all consequential damages.

In *Davis v. Graviss, supra,* we addressed the claimant's "right to compensation for an injury causing an increased risk of future harm and for mental suffering and impairment of earning power resulting from the *fear* caused by the increased risk of future harm." 672 S.W.2d at 930. Emphasis original. We cited *Wilson v. Redken Laboratories, Inc.,* Ky., 562 S.W.2d 633 (1978), recognizing a cause of action for permanently damaging the plaintiff's hair, "a condition causing no physical pain and [only] cosmetic in nature," and *Murray v. Lawson,* Ky., 441 S.W.2d 136 (1969), accepting as "proof of damages ... a disabling 'phobic reaction' to an injury from which [the plaintiff] was otherwise fully recovered." *Id.* We concluded the plaintiff was entitled to recover for both "the increased likelihood of future complica-

tions" and the "mental suffering and emotional distress" attaching to the nature of a fracture at the base of the skull which " 'increase[d] her susceptibility to meningitis,' even though future meningitis was not probable but a mere possibility." *Id.* 672 S.W.2d at 931.

"Thus, where there is substantial evidence of probative value to support it, the jury may consider and compensate for the increased likelihood of future complications. Where, as here, that likelihood initiates serious mental distress, this also is compensable." *Id.* at 932.

The critical difference between *Davis v. Graviss* and the present case is that in *Davis v. Graviss,* as in *Deutsch v. Shein,* the cause of action had already accrued: the plaintiff was suing for future consequences where there was a present injury, not, as here, for the potential consequences of a negligent act where no harmful change was yet made manifest.

■ The plaintiffs argue that the rule against splitting of causes of action, as discussed in *Kirchner v. Riherd,* Ky., 702 S.W.2d 33 (1986), requires that they presently sue in negligence because their cause of action for outrageous conduct causing severe emotional distress ripened with the discovery of their exposure. The rule against splitting causes of actions, found in *Restatement (Second) of Judgments,* §§ 24 and 26, is an equitable rule, limiting all causes of action arising out of a single "transaction" to a single procedure. But it has a number of exceptions, and the present situation provides such an exception because the plaintiffs cannot sue on the negligence claim before the cause of action accrues. This is the same equitable consideration that underlies the decision in the *Louisville Trust Co. v. Johns–Manville Products, supra,* case, extending the discovery rule to a claim otherwise cut off by a statute of limitations, and it is a corollary to our refusal to recognize a statute of repose cutting off a cause of action before it exists (*see Tabler v. Wallace,* Ky., 704 S.W.2d 179 (1985)).

■ *Richard v. Adair Hospital Foundation Corp.,* Ky.App., 566 S.W.2d 791

(1978), held there was a cause of action stated against a hospital for refusing to admit a baby suffering from pneumonia for treatment. The baby died hours later after being admitted at a second hospital. We based our decision on the fact that the medical testimony established the child had been "denied a chance of recovery [which] would have been substantially better had treatment been rendered when the child was presented." 566 S.W.2d at 793. There was no physical contact, as such. Thus, there is no intrinsic value in physical contact except as a defining event to prove a tort has occurred, and failing to act as well as taking action may define when liability exists for negligent conduct when there are harmful consequences. But in *Richard v. Adair Hospital,* the increased risk of future harm was compensable only because there was an immediate harm as a result of the defendant's negligent act. Thus physical contact is not the *sine qua non* for awarding damages for negligent conduct where there is immediate harm. It is tangible injury that triggers the existence of a cause of action, and then, once a harmful change has occurred the plaintiff may sue for the increased risk of future consequences which are presently compensable as a part of the cause of action that has accrued. This is consistent with the rule against splitting a cause of action, as discussed in *Kirchner v. Riherd,* Ky., 702 S.W.2d 33 (1986). This rule requires a party to assert all causes of action which may arise from a single "transaction" in a single lawsuit, rather than proceeding piecemeal in multiple actions.

Of the many cases cited from other jurisdictions, the one closest to our Kentucky jurisprudence is *DeStories v. City of Phoenix,* 154 Ariz. 604, 744 P.2d 705 (1987). As in our case, this was an appeal from summary judgment questioning "whether exposure to and inhalation of airborne asbestos particles, which create an increased risk of asbestosis or lung cancer but no immediate physical deterioration, constitute a sufficient physical injury to support a claim for damages for emotional distress," and "whether an increased risk of contracting asbestosis or lung cancer constitutes a legally compensable injury in and of itself." 744 P.2d at 706. The

court states the plaintiffs "failed to establish any compensable physical harm." *Id.* at 708. "In the instant case plaintiffs adduced no evidence tending to establish the existence of any physical harm or medically identifiable effect from their exposure to asbestos or their associated emotional distress. Accordingly, plaintiffs failed as a matter of law to establish the prerequisite to recovering damages for that emotional distress." *Id.* at 711.

The plaintiffs have urged us to consider *Eagle–Picher Industries, Inc. v. Cox,* 481 So.2d 517 (Fla.App.1985), in support of their claim for damages for fear of cancer. The case involves recovery for negligent infliction of emotional distress due to contact with asbestos. The Florida court states, and we agree, "the essence of the impact rule [is] ... that the outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, touch or enter into the Plaintiff's body." *Id.* at 527. But the *Eagle–Picher* case supports the trial judge's analysis of this case rather than the plaintiffs' analysis. In *Eagle–Picher,* the plaintiff had a *present manifestation of physical harm* to support the existence of a cause of action: the plaintiff had "contracted asbestosis, but not cancer, [as well as] an enhanced risk of contracting cancer in the future." 481 So.2d at 519. The Florida court allowed recovery for present injury, the asbestosis, and *fear* of contracting cancer, but stopped short of allowing recovery for the increased risk of contracting cancer in the future. As such its holding is more limited than the trial court's decision in the present case, and more limited than what we would allow under *Davis v. Graviss* if here there was presently a demonstrably harmful result from the exposure. Our present decision permits recovery for enhanced risk of cancer as well as mental distress if *first* the plaintiff can cross the threshold of establishing a harmful change has resulted from exposure to the potentially cancer producing agent.

As the Court of Appeals' opines, *Davis v. Graviss* recognized "the right to compensation for an increased likelihood of future complications arising from a realized

injury other than a mere contact"; "the plaintiff's 'right to compensation for an injury causing an increased risk of future harm.'" On the other hand, *Deutsch v. Shein* recognized that in a negligence case, while Kentucky adheres to the concept of both "physical contact" and "injury" as a threshold requirement to establish a tort has occurred, the contact need not be directly related to the injury as long as it is a "substantial factor" in causing the result. The rule against the splitting of a cause of action requires that the plaintiff must include within a single action all identifiable future consequences including increased risk of future harm in addition to injuries and damages accrued on the date of trial. *Davis v. Graviss* holds that "where there is substantial evidence of probative value to support it, the jury may consider and compensate for the increased likelihood of future complications. Where, as here, that likelihood initiates serious mental distress, this also is compensable." 672 S.W.2d at 932.

The debate about how to apply *Davis v. Graviss* in awarding damages suggests the case has been misunderstood by some in two respects: (1) as sanctioning separate recovery for a new type of damages in addition to the traditional elements of tort recovery; and (2) as sanctioning recovery in the amount that would be appropriate if such future complications were already fully realized.

■ 1) A recovery for an increased risk of future harm, when such risk is established as a reasonable likelihood, is not a new element of damages but proof that the jury should consider in compensating for future physical pain and mental suffering, for future impairment or destruction of earning power, and, if there is evidence to support it, for future medical expenses.

■ 2) In awarding damages for the increased risk of future harm, the fact-finder should take into consideration the degree of the likelihood of future harm. Our law presently recognizes a jury is fully capable of apportioning fault. In like manner, a jury should apportion damages by degree for the increased likelihood of future harm. In this case, if there were now a present manifestation of harm caused by the plaintiffs' expo-

sure to asbestos, in awarding damages for future harm the jury would need to assess how much greater now is the plaintiffs' risk of developing cancer in the future than it was before the tort occurred.

In the *Eagle–Picher* case the plaintiff was *presently* suffering from asbestosis, and nevertheless the court made a policy decision to permit damages for "fear of" contracting cancer but to rule out damages for "enhanced risk of contracting cancer in the future." It did so by stating, "[t]he plaintiff's right to sue for cancer damages if and when he contracts that disease is reserved, and such a suit will not be subject to the rule against splitting causes of action." *Id.* at 529. This rule is unwieldy and unnecessary under *Davis v. Graviss* which permits the finder of fact to evaluate and assess damages for the enhanced risk of contracting cancer, assuming first, of course, that the proof establishes the claim accrued by reason of a demonstrable harmful result from the tortious contact.

■ Thus we accept defendant's view that mere ingestion of a toxic substance does not constitute sufficient physical harm upon which to base a claim for damages. We make no distinction between damages for "fear of" cancer and damages for enhanced risk of developing the dreaded disease in the future. We base this on the present state of negligence and products liability law in Kentucky, as represented by *Louisville Trust Co. v. Johns–Manville Products Co., Deutsch v. Shein,* and *Davis v. Graviss, supra.* But until such time as the plaintiff can prove some harmful result from the exposure, albeit he need not prove he is already suffering from cancer, his cause of action has yet to accrue.

## II. OUTRAGEOUS CONDUCT CAUSING SEVERE EMOTIONAL DISTRESS

■ The alternative theory of liability stated in the Complaint was for outrageous conduct causing severe emotional distress. *Restatement (Second) of Torts,* § 46. We address the nature of this tort, as we would apply it in Kentucky, in *Craft v. Rice,* Ky., 671 S.W.2d 247 (1984) and *Humana of Ken-*

*tucky, Inc. v. Seitz,* Ky., 796 S.W.2d 1 (1990). This is an intentional tort, and the physical contact rule has no application:

> "The basis of the cause of action is intentional interference with the plaintiff's rights causing emotional distress, with or without personal injury in the traditional sense. If there has been physical injury with pain to the body or mind, it is incidental to the emotional distress rather than essential to the cause of action.... The plaintiff may have a cause of action for emotional distress from the intentional and unlawful interference with her rights, regardless of whether she suffers any bodily injury from such interference." *Craft v. Rice,* 671 S.W.2d at 249.

In *Humana of Kentucky, Inc. v. Seitz,* while adhering to the principles of *Craft v. Rice,* we held the conduct alleged, mistreatment of the plaintiff by the hospital nursing staff while she was a prenatal patient, failed "to satisfy the threshold requirements for the tort of outrageous conduct." 796 S.W.2d at 1. The alleged misconduct consisted, in the main, of nurses ignoring the plaintiff's cries for help through her distress in the night before the child was delivered. Ultimately she delivered the baby into a bedpan, dead on arrival. We stated:

> "The delay in time before a nurse arrived may well be negligence, but it is hardly intentional, outrageous, or reckless conduct [as required by *Restatement (Second) of Torts,* § 46 (1965)]. All other evidence indicated that the nursing staff carefully and regularly cared for respondent from the time she began suffering pain. The time lapse, *per se,* would only tend to show negligence, not the tortious conduct alleged here." *Id.* at 3.

For purposes of summary judgment the record in this case supports a different conclusion. We infer there will be evidence that for a period of about five months, more or less, Bailey was knowingly and recklessly exposed to asbestos dust and fibers, a potentially cancer producing risk. As the Court of Appeals summarizes:

> "The parties do not appear to dispute that the appellee was under a duty to warn Mr. Bailey of the presence of asbestos.[4] At the same time, as the record stands, it could be inferred that the appellee intentionally failed to do so. It, likewise, could be inferred that the appellee should have realized that there was a high probability that severe emotional distress would follow from Mr. Bailey's unwitting exposure to such a dangerous substance as asbestos. We cannot say as a matter of law that if the appellee, with full knowledge of the danger, intentionally failed to warn Mr. Bailey or his employer [his wife] of the presence of the asbestos, this would not constitute outrageous conduct. The known effects of exposure to this substance are such that we regard it as 'utterly intolerable in a civilized community,' *Restatement (Second) of Torts* § 46, comment d at p. 73 (1965), that one having a duty to warn of its presence would deliberately fail to do so."

We do not second-guess the Court of Appeals on this assessment of the evidence.

But we do find that the Court of Appeals erred in withdrawing this portion of the opinion addressing the tort of outrageous conduct causing severe emotional distress on procedural grounds. These grounds were raised for the first time on Capital Holding's Petition for Rehearing, wherein it stated: "In the first place, the issue of outrageous conduct was not preserved for appeal by appellants' prehearing statement." Capital Holding was referring to the issues portion of the Baileys' prehearing statement, but the argument fails to develop *why* the issues statement was deficient and there appears to be no reason other than the tort was not specifically designated by name in stating the issues.

Having examined the Baileys' Prehearing Statement, we conclude the issues regarding the tort of outrageous conduct were sufficiently addressed. The prehearing statement is part of the prehearing conference rule (CR 76.03), which is an informal procedure added to the appellate process in an

---

**4.** In our Court Capital Holding concedes it knew of the asbestos, but argues there are offsetting facts mitigating the duty to warn. This is, at most, a controverted issue for the trier of fact.

effort to settle cases, or otherwise dispose of them, without the need of a full-blown appeal. While the Baileys did not identify the tort of outrageous conduct *per se* in their prehearing statement, neither did they so identify negligence or failure to warn. Their issues statement tried to focus on, and briefly summarized, the key issues underlying their claims, which is precisely what the prehearing statement intends.

The first two issues addressed "[w]hether Kentucky law requires some type of [present] injury or illness before Plaintiffs can be compensated," and the second "[w]hat constitutes sufficient physical "contact" in order to support plaintiffs' cause of action." The third issue addressed liability "for decontamination of plaintiffs' home." Capital Holding filed a supplemental prehearing statement, which is permitted by CR 76.03(4), which "question[ed] the right of plaintiff to appeal any question of damages for 'decontamination' " but did not otherwise question whether the theories of liability stated in the complaint were viable issues.

The informal nature of the prehearing conference is demonstrated by what followed here, which was a prehearing conference "by telephone conference call on September 11, 1991," at which nothing was resolved. Thereafter, the case proceeded by briefing and argument as the appellate rules required. The Baileys' issues regarding the tort of outrageous conduct causing severe emotional distress were presented in their Appellants' Brief, addressed on their merits in Capital Holding's Appellee's Brief, and argued on the merits in the Court of Appeals. There was no procedural objection until the Petition for Rehearing.

▮▮▮ We have already had occasion to address the Court of Appeals' abuse of CR 76.03 in *Crossley v. Anheuser–Busch, Inc.,* Ky., 747 S.W.2d 600 (1988). In *Crossley,* the appellants had filed their prehearing statement with the Clerk of the Circuit Court instead of the Clerk of the Court of Appeals as CR 76.03(3) requires, resulting in a delay of "three and a half months [during which] no progress was made toward resolving the case on the merits." *Crossley* holds the action taken by the Court of Appeals in dis-

missing the appeal for failure to properly file the prehearing statement was an abuse of discretion. The opinion makes it abundantly clear that failure to observe strict compliance with CR 76.03 is not jurisdictional. This being so, the question is one of substantial compliance with appropriate sanctions primarily dependent upon whether and what prejudice resulted to the opposing party, similar to our treatment of CR 76.02(2) in *Ready v. Jamison,* Ky., 705 S.W.2d 479 (1986) and *Foxworthy v. Norstam Veneers, Inc.,* Ky., 816 S.W.2d 907 (1991). The sanctions provided for in CR 76.03(12) are not to be used as a method of docket control, nor do they justify a hypertechnical reading of the statement of issues requirement in CR 76.-03(3)(i). There was no reason here for the Court of Appeals to modify its opinion on Petition for Rehearing to withdraw consideration of an issue already fully briefed and argued, and decided on its merits.

Bertelsman & Philips, *Kentucky Practice,* 4th ed. (1992 Supp.), Rule 76.03, p. 185, discusses two recent Court of Appeals cases, *Howard v. Magoffin Co.,* Ky.App., 734 S.W.2d 499 (1987) (cited by the Court of Appeals when it modified the present opinion) and *Karam v. Greentree Corp.,* Ky.App., 783 S.W.2d 78 (1990), as making failure to strictly comply with the rules regarding a prehearing statement into "a serious pitfall to an unwary practitioner." CR 76.03 was not intended as a "pitfall." To the extent these two opinions have made it so, they are overruled.

We come to one final issue, which is whether our decision today vacating and remanding the summary judgment insofar as it denies plaintiffs the right to proceed on their theory of outrageous conduct causing severe emotional distress, but affirming the trial court's decision on the negligence theory of liability, violates the rule against permitting splitting of causes of action, as stated in *Kirchner v. Riherd,* Ky., 702 S.W.2d 33 (1986). It does not, and the reason is because the rule against splitting a single transaction into multiple causes of action does not apply to a negligence action which has not yet accrued. This rule would require the plaintiff to seek relief for future damages

if a cause of action had already accrued, but it has no place in a cause of action which has not yet accrued. The final judgment in the trial court in the present case recognized this problem by, in effect, leaving open the plaintiffs' right to pursue their negligence claim when it should accrue by reason of some harmful manifestation resulting from the asbestos-related exposure. Unfortunately, the dismissal also included the claim for outrageous conduct causing severe emotional distress, which had already ripened.

The decision of the Court of Appeals is reversed, and the final judgment of the trial court is reversed insofar as it dismisses plaintiffs' claims for outrageous conduct causing severe emotional distress. The trial court's judgment is otherwise affirmed.

All concur as to "I. Negligence."

STEPHENS, C.J., and LAMBERT, LEIBSON and STUMBO, JJ., concur as to "II. Outrageous Conduct Causing Severe Emotional Distress"; REYNOLDS, SPAIN and WINTERSHEIMER, JJ., would affirm the trial court's summary judgment dismissing this claim.