**FARM CREDIT BANK
OF LOUISVILLE,**
Plaintiff,

v.

**UNITED STATES MINERAL
PRODUCTS COMPANY,**
Defendant.

**Civ. A. No. 91–0126–L(CS).**

United States District Court,
W.D. Kentucky,
at Louisville.

Jan. 6, 1994.

Memorandum Supplementing Opinion
Aug. 26, 1994.

Marion C. Fairey, C. Alan Runyan, Speights & Runyan, Hampton, SC, Stanley W. Whetzel, Taustine, Post, Sotsky, Berman, Fineman & Kohn, Louisville, KY, for plaintiff.

Michael A. Owsley, English, Lucas, Priest & Owsley, Bowling Green, KY, Stephen J. Imbriglia, Philadelphia, PA, for defendant.

### MEMORANDUM OPINION

SIMPSON, District Judge.

This matter stands submitted on two motions for summary judgment by the defendant, United States Mineral Products (hereinafter "USMP"). USMP claims that plaintiff, Farm Credit Bank (hereinafter "FCB"), is barred from bringing this action due to its failure to comply with the relevant statute of limitations. USMP alternatively asserts in a second summary judgment motion that FCB has improperly calculated its damages.

[Material at this point was deleted by Judge Simpson for purposes of publication.]

### I

The Farm Credit Bank Building is located at 201 West Main Street, Louisville, Kentucky, and was constructed in the late 1960s and early 1970s. During construction, fireproofing was sprayed onto the underside of the concrete floor slabs, metal deck, and structural steel. The fireproofing, which was manufactured by USMP, contained anywhere between 20% to 30% chrysotile asbestos. According to EPA definitions, the fireproofing was "friable." This means that it was capable of being reduced to a fine powder by hand pressure.

Title to the building was transferred several times during the early 1970s. FCB did not obtain title until sometime in 1975. It moved into the building on May 30, 1975. During the 1970s, the scientific community began to articulate concerns about health risks posed by asbestos. It was also during this time that the federal government began passing various regulations either limiting or restricting the use of asbestos products.

The question of whether asbestos was present in building products installed in the FCB building first arose in 1978. Ray Sanders, the building manager of FCB, asked Thomas Jones, one of the architects involved in the building's design, whether the building's fireproofing was of an asbestos material. Mr. Jones responded on August 4, 1978, that it was his belief and the belief of those who applied the fireproofing that it did contain an asbestos fiber which was permissible at that time. However, he stated that this was just an assumption and that the material would have to be tested before that could be confirmed.

It was not until October 10, 1980 that Sanders again asked Jones to follow up on whether the fireproofing material did indeed contain asbestos. In the interim, James Willoughby, who had been hired as a maintenance employee at FCB, noticed that in some places the fireproofing had fallen off and landed on various ceiling tiles. In Sanders' follow-up letter, he asked Jones to determine if the material contained an asbestos fiber that was "being regarded by some agencies as a long range health hazard." Jones, pursuant to the request of Sanders, sought information from a sales manager of USMP about the asbestos content of its product. By letter dated November 24, 1980, Jones responded to Sanders' inquiry indicating that his research had led him to the conclusion that the product used was asbestos free. However, he stated that he wanted to make sure that the product used in FCB's building was

the same product he found to be non-toxic. He concluded by adding that if he found out anything of further interest he would let FCB know.

This seemed to convince FCB that it had no cause for concern, and the issue of asbestos did not arise again until late 1984. Apparently Sanders again became concerned as to whether the fireproofing contained asbestos, and a sample of it was sent to Pittsburgh Testing Laboratory. In its report dated December 10, 1984, Pittsburgh Testing Laboratory revealed that the material tested positive for asbestos.

It is unclear when exactly Sanders learned of the Pittsburgh report. However, sometime in mid–1985 Sanders read a Governor's Consumers Advisory Council report entitled *Confronting the Problems of Asbestos in Kentucky: Findings with Recommendations for Action.* One of the experts whose testimony was included in this report was that of David Banks. On September 25, 1985, Banks sent a letter to Sanders stating that he understood FCB might be seeking professional help concerning an asbestos related problem in its building. Shortly thereafter, FCB proceeded to hire Banks to conduct an asbestos survey of its building. The survey, which included bulk and air samples as well as a written report, was conducted and released on November 29, 1985. The report confirmed that asbestos-containing building materials, including fireproofing, were present in the building. However, the report also indicated that although asbestos-containing products were present, there was no detectable asbestos in the air. Nevertheless, the report made several recommendations including the following:

1. Now that friable asbestos-containing materials have been documented inside the building, occupants should be made aware of their presence and precautions they can take to avoid exposure to these materials. Legal counsel should be consulted to determine the best approach of informing persons involved. As a part of this notification, asbestos warning signs should be posted in areas where those materials may be encountered such as mechanical equipment rooms, penthouse, above suspended ceilings and on parking levels. Signs are important in warning persons not familiar with the building or this report who may come in contact with the asbestos. Such persons are maintenance and service personnel working for outside service companies, contractors, safety enforcement agencies, etc.

2. Until such time as asbestos in the building can be permanently abated, steps should be taken to protect occupants from exposure. These include continuous monitoring of these materials and cleanup followed by encapsulation of any damaged areas where friable material is dislodged or left exposed to the air or contact by persons. Maintenance staff are key to the success of these operations. They should receive special instruction covering what conditions to look for and steps to take in safely cleaning up any loose or damaged materials. Each instance should be reported and appropriate documentation filed in a permanent file . . . .

4. Until permanent measures are taken to resolve possible exposure to asbestos, periodic testing of the air inside the building should be conducted using qualified consultants and laboratories. Although our testing indicated no problem at the time of testing, it should be remembered that testing was done at a time of very low activity within the building (a weekend). Conditions do change and when they do, the potential for changes in the airborne concentration of fibers exists. Periodic test data is also an important part of the permanent asbestos record . . . .

7. A plan for dealing with asbestos-containing materials in the building on a long term basis should be developed soon. Once the presence of asbestos has been established, it is important to take steps to prevent exposure by employees or the public, and it is important to document the steps taken.

Professional consultants should be engaged to help in developing the plan.

Options available for consideration include removal, encapsulation and enclosure. Discussions and comparisons of these options is beyond the scope of this report since costs and disruption to office operations vary from one to the other. Removal, however, is the only permanent solution and has the advantage of not requiring continual monitoring of the condition of materials....

8. Legal counsel should also be consulted concerning the possibility of cost recovery actions. While most of the class action claims have already been closed to additional claimants, other avenues of cost recovery are still possible. It may be possible to recover some of the cost of dealing with asbestos in this building.

The extent to which these recommendations were followed is uncertain. What is apparent is that the situation remained a cause of concern for FCB. This concern was heightened even more so on September 19, 1988 when samples of air and settled dust in the building were analyzed and found to contain asbestos fibers. This was the first time FCB became aware that its building had been "contaminated" with asbestos fibers.

FCB then filed this action on February 28, 1991,[1] alleging six different causes of action against USMP. The relief requested was based on theories of (1) conspiracy, (2) breach of implied warranties, (3) restitution, (4) strict liability, (5) breach of post manufacture/sale duty to warn, and (6) negligence. USMP moved for summary judgment in relation to each count based on the statute of limitations. Alternatively, it sought summary judgment on the issue of damages.

[Material at this point was deleted by Judge Simpson for purposes of publication.]

## III

### CONSPIRACY

■ FCB asserts that USMP had available to it, since the 1930s, scientific data which clearly indicated that asbestos products were hazardous. USMP then allegedly conspired to deprive the public of this data, which in turn cost FCB the opportunity to choose not to expose itself to the asbestos product.

Both parties concede that the relevant statute of limitations for a conspiracy claim is one year. KRS 413.140(1)(c) states:

(1) The following actions shall be commenced within one (1) year after the cause of action accrued:

.    .    .    .    .

(c) An action for malicious prosecution, conspiracy, arrest, seduction, criminal conversation or breach of promise of marriage....

FCB had information available to it in 1985, if not sooner, that its building contained asbestos, that asbestos had been found to have dangerous propensities, and that USMP was its manufacturer. This was well over one year before this action was filed. Therefore, any conspiracy claim is barred by the statute of limitations. KRS 413.140(1)(c). Summary judgment will be **GRANTED** for the defendant on this claim.

### BREACH OF IMPLIED WARRANTY

FCB additionally alleges that USMP impliedly warranted that the asbestos product was of good and merchantable quality and fit for its intended purpose. FCB claims that defendant breached this warranty in that the asbestos product did not meet the aforementioned standards.

---

1. We note that there is some discussion of the parties agreeing to toll the statute of limitations on October 31, 1990, making that date the relevant one for statute of limitations purposes. FCB claims the parties had such an agreement and while USMP stated it would address the issue in its reply memorandum, it never did so.

At any rate, both parties seem to agree, as do we, that it is unimportant whether the date of filing this action was February 28, 1991 or October 19, 1990. However, should this time differential become a dispositive issue at a later date, we will address it at that time.

A cause of action for breach of implied warranties is controlled by the Uniform Commercial Code, particularly KRS 355.2–725:

(1) An action for breach of any contract for sale must be commenced within (4) years after the cause of action accrued....

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

KRS 355.2–725(1), (2).

There is no suggestion that a warranty extended to future performance. Thus, the statute of limitations for this cause of action is four years. The claim began to accrue in 1969 or 1970 when the fireproofing was delivered. It follows that any warranty claim is time-barred. This is in accord with the decisions of numerous other courts which have held that in an asbestos property damage action, a claim asserting breach of implied warranties is limited by the U.C.C.'s four-year bar. *See Heider v. W.R. Grace & Co.,* No. 89–C–9067, 1990 WL 129347, at *2, 1990 U.S.Dist. LEXIS 11137, at *5 (N.D.Ill. Aug. 21, 1990) (holding that U.C.C. 2–725 controls breach of implied warranty claim and dismissing plaintiff's cause of action); *In re: Asbestos School Litigation,* No. 83–0268, 1990 WL 199065, at *2–3, 1990 U.S.Dist. LEXIS 16411, at *30 (E.D.Penn. Dec. 3, 1990) (breach of warranty claim in an asbestos property damage action is clearly barred after four years and granting summary judgment in favor of defendant); *May v. AC & S, Inc.,* 812 F.Supp. 934, 944 (E.D.Mo.1933) (implied warranty claim barred by U.C.C. four-year statute of limitations); *Tioga Public School Dist. v. U.S. Gypsum,* 984 F.2d 915, 922 (8th Cir.1993) (casting doubt on whether an implied warranty claim could be maintained and granting summary judgment to defendant).

■ We are not persuaded by plaintiff's argument that it is alleging a cause of action for breach of common law implied warranties. We recognize that at least one court has agreed with FCB's theory. *See Drayton Public School D. 19 v. W.R. Grace & Co.,* 728 F.Supp. 1410, 1414 (D.N.D.1989) (holding that warranty provisions of the U.C.C. did not invalidate common law warranty theories). However, this goes against the prevailing weight of authority. More importantly, Kentucky law does not support this proposition. In Kentucky, the Uniform Commercial Code became effective July 1, 1960. This was almost ten years before the asbestos in question was installed in FCB's building. We are not convinced that a common law action for breach of implied warranty existed due to the traditional rule of *caveat emptor. See Crawley v. Terhune,* 437 S.W.2d 743, 745 (Ky.1969). Nevertheless, even if such a claim was viable, the U.C.C. had been adopted by the time the building in question was constructed, making it dispositive. The enactment of the U.C.C. in Kentucky was a clear expression of legislative intent to occupy the field of commercial transactions. *Williams v. Fulmen,* No. 83–CA–2515, slip op. at 4 (Ky.Ct.App. June 29, 1984). Thus, KRS 355.2–725 provides the proper statute of limitations for a breach of warranty claim. The cause of action accrues upon delivery.

Therefore, defendant's motion for summary judgment as it pertains to the breach of implied warranty will be **GRANTED.**

### *RESTITUTION*

■ FCB also asserts a claim for restitution. It argues that USMP had a duty to undertake the abatement of asbestos from its building to satisfy the requirements of public decency, health, and safety. FCB argues that because it performed that duty for USMP, it has been damaged and is entitled to restitution.

Restitution is a theory of recovery, not a cause of action. We note that in other asbestos property damage actions, claims for restitution have not had much success. *See Roseville Plaza Ltd. Partnership v. U.S. Gypsum Co.,* 811 F.Supp. 1200, 1213 (E.D.Mich.1992) (granting defendant's motion for summary

judgment on restitution claim); *Heider v. W.R. Grace & Co.*, No. 89–C–9067, 1990 WL 129347, at \*3 1990 U.S.Dist. LEXIS 11137, \*8 (N.D.Ill. Aug. 21, 1990) (holding restitution claim should be dismissed because there was no duty to abate). *But See Drayton Public School D. 19 v. W.R. Grace & Co.*, 728 F.Supp. 1410, 1415 (D.N.D.1989) (denying defendant's motion for summary judgment on restitution and allowing plaintiff's claim to proceed).

We find that in an asbestos property damage action, a claim for restitution is not a viable claim. Therefore, defendant's motion for summary judgment as it pertains to the restitution cause of action will be **GRANTED.**

[Material at this point was deleted by **Judge Simpson for purposes of publication.**]

### CONCLUSION

[Material at this point was deleted by **Judge Simpson for purposes of publication.**]

A separate order will be entered as to those issues we have disposed of herein. The summary judgment motion on the damage issue will be **REMANDED AS PREMATURE.** It may be revived later, if appropriate, by motion.

**IT IS SO ORDERED.**

### SUPPLEMENTAL MEMORANDUM OPINION AND ORDER

Plaintiff, Farm Credit Bank of Louisville (hereinafter "Agribank" as the successor-in-interest to Farm Credit Bank), filed this action alleging six separate causes of action. All claims stemmed from alleged property damage resulting from asbestos-containing fireproofing manufactured by the defendant, United States Mineral Products (hereinafter "USMP"). This matter last stood before the court on two motions by USMP for summary judgment. In its first, USMP claimed the action was barred by the applicable statute of limitations. Alternatively, USMP asserted that Agribank improperly calculated its damages.

By order dated January 6, 1994, this court granted summary judgment in favor of USMP on three of Agribank's six claims. Those remaining alleged strict liability, breach of post manufacture/sale duty to warn and negligence. We certified three questions of law to the Kentucky Supreme Court and remanded summary decision on the remaining claims and motion. The issues certified were potentially dispositive and matters of first impression in Kentucky. Rather than attempting to predict state law, we felt Kentucky courts should first be afforded the opportunity to speak. The Kentucky Supreme Court did not agree and denied certification. Therefore, we will address the questions and adopt the rationale which is not only the most sound, but also the most in harmony with the current status of Kentucky law.

### I

This memorandum is intended to supplement our prior opinion and order of January 6, 1994. In that ruling, we thoroughly detailed the issues which led to the certification previously discussed. Generally, for each of the three certified questions of law we found a split of relevant authority coupled with a lack of Kentucky precedent. There is no need to again review the exhaustive list of authorities supporting each side of every issue.

■ This court's initial question concerned the applicable statute of limitations for an asbestos property damage action. USMP argued for a five-year limitation period, while Agribank asserted it had ten years to file its claims.

We find that the appropriate limitation period for an action alleging asbestos property damage is five years. In Kentucky, an action for trespass on real or personal property must be commenced within five years after the cause of action accrues. KRS 413.120(4). Further, the Kentucky Court of Appeals held in *Commonwealth, Department of Highways v. Ratliff*, 392 S.W.2d 913 (Ky. 1965), that the five-year statute of limitations applies to actions for damage to real property resulting from negligence. The *Ratliff* court held that KRS 413.120(4) barred the

Commonwealth from bringing an action against the owner and driver of a truck for damage to a highway bridge more than five years after a collision. *Id.* at 914.

Agribank urges that Kentucky's ten-year catch-all statute of limitations applies here. KRS 413.160 provides that "an action for relief, not provided for by statute, can only be commenced within ten (10) years after the cause of action accrued." We cannot find that a property damage action is a claim for relief "not provided for by statute." KRS 413.120(4) clearly applies to actions for trespass "on real or personal property." As in *Ratliff,* the case at bar alleges property damage occasioned by negligence. The plain language of KRS 413.120(4) coupled with the *Ratliff* decision compels the finding that in an asbestos property damage action the appropriate statue of limitations is five years.

■ Our second query addressed whether, in Kentucky, the "discovery rule" would apply to claims alleging property damage. The discovery rule can be stated as follows: "A cause of action will not accrue until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Louisville Trust Co. v. Johns–Manville Products,* 580 S.W.2d 497, 501 (Ky.1979). The discovery rule was first adopted by the Kentucky Supreme Court in 1970 and applied solely to actions for medical malpractice. *Tomlinson v. Siehl,* 459 S.W.2d 166 (Ky.1970). Subsequently, the discovery rule was expanded to cover latent personal injuries on account of exposure to a harmful substance. *Louisville Trust Co.,* 580 S.W.2d at 502. The rule has not been broadened beyond its application to medical malpractice or other latent personal injury. Kentucky courts have not addressed whether the discovery rule should apply to a property damage action where the property damage has a similar latent feature.

We find that the same rationale which applies in medical malpractice and other latent personal injury cases should extend to latent property damage actions as well. The Kentucky Supreme Court has stated:

The thrust of *Urie* [*v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)] is that when an injury does not manifest itself immediately the cause of action should accrue not when the injury was initially inflicted, but when the plaintiff knew or should have known that he had been injured by the conduct of the tortfeasor. An action accrues only at the time the plaintiff suffers an actionable wrong. In *Saylor v. Hall,* Ky., 497 S.W.2d 218, 225 (1973) we stated: "A cause of action does not exist until the conduct causes injury that produces loss or damage."

*Louisville Trust Co.,* 580 S.W.2d at 500.

If the discovery rule is not applied in asbestos property damage actions, the limitations clock would begin to run before the property owner is or should be aware of an injury. The potential for an unjust result is enormous. We conclude that latent damage claims, whether for personal injury or for property damage, should be accorded the same treatment.

While our prior opinion recognizes contrary authority, extension of the discovery rule is in accord with the majority of courts which have addressed the issue. *See Drayton Public School D. 19 v. W.R. Grace & Co.,* 728 F.Supp. 1410, 1412 (D.N.D.1989) ("cases involving latent-product defects, such as asbestos-containing materials are governed by the discovery rule"); *University System of New Hampshire v. U.S. Gypsum,* 756 F.Supp. 640, 648 (D.N.H.1991) ("a cause of action involving harm to property will not accrue under the discovery rule until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured, but also that his injury may have been caused by defendant's conduct"); *Roseville Plaza Ltd. Partnership v. U.S. Gypsum Co.,* 811 F.Supp. 1200, 1205 (E.D.Mich.1992) (holding asbestos property damage claim was governed by three-year limitation period and discovery rule applied); *In re Asbestos School Litigation,* No. 83–0268, 1991 WL 175848, at *5, 1991 U.S.Dist. LEXIS 12576, at *15 (E.D.Pa. September 4, 1991) (in property damage action based on presence of asbestos-containing materials discovery rule applies); *City of*

*Berea v. United States Gypsum Co.,* CA No. 86–172 (E.D.Ky., order dated June 29, 1988) (Wilhoit, J.); *Commonwealth ex rel. Armstrong v. United States Gypsum Co., et al,* CA No. 85–CI–1915 (Franklin Circuit Court, order dated July 25, 1986) (Corns, J.).

In sum, we echo the rationale of Judge (now Kentucky Supreme Court Justice) Spain in *Hopkins County Board of Education v. National Gypsum Company,* CA No. 83–CI–306 (Hopkins Circuit Court, order dated July 12, 1984) (Spain, J.):

> This court is of the opinion that the "discovery rule" should apply equally as a matter of public policy, to property damage claims in situations where the claimant is unaware of the dangerous propensities of a product notwithstanding its apparent suitability for the purpose for which it was produced.

*Id.* at 4–5.

■ The final unanswered question dealt with whether an asbestos property damage action could accrue before there has been a "contamination" of the surrounding environment, *i.e.,* before toxic asbestos fibers are released into the surrounding environment. In our previous opinion we discussed two prevailing theories. The first is that the presence of asbestos combined with a knowledge of its potential health hazards is alone sufficient to accrue an action for asbestos property damage. The second asserts that "contamination" of the environment is also required to accrue such an action. "Contamination" is defined as the release of .toxic asbestos fibers into the environment coupled with an ability to ascertain a substantial and unreasonable risk of harm from that release.

Although there exists a dearth of Kentucky case law addressing damage to property from asbestos, the same cannot be said about personal injury cases alleging harmful exposure to asbestos. Most recently, the Kentucky Supreme Court addressed accrual of tort claims for asbestos exposure and "whether damages may be recovered when there is no present manifestation of a diseased condition." *See Capital Holding Corp. v. Bailey,* 873 S.W.2d 187 (Ky.1994). While *Bailey* addressed asbestos claims in relation to personal injury, it remains the latest word in Kentucky on accrual of tort claims relating to asbestos.

In *Bailey,* the plaintiff was employed for a period of months to remove pipes and ducts from a building owned by the defendant. Defendant, despite consciousness of both the presence of asbestos and its dangerous propensities, failed to warn the plaintiff. Upon learning that his work area was contaminated with asbestos, the plaintiff went to see his doctor for a physical exam, x-rays and testing. While the plaintiff had no present abnormality or manifestation of disease, his doctor concluded he had an increased risk of developing cancer.

The plaintiff brought suit alleging (1) negligence resulting in an increased risk of future harm from an asbestos-related disease and accompanying mental suffering over fear of such disease and (2) outrageous conduct causing severe emotional distress. We focus on the Kentucky Supreme Court's analysis of the negligence claim, since negligence is a principal claim asserted here by Agribank.

In rejecting the plaintiff's negligence claim, the Kentucky Supreme Court focused on three prior cases for the proposition that a cause of action cannot accrue until there is an injury which produces loss or damage. *Id.* at 192. The court found that there must be some type of present injury, not just a suit "for the potential consequences of a negligent act where no harmful change was yet made manifest." *Id.* at 193. The court concluded:

> Thus we accept defendant's view that mere ingestion of a toxic substance does not constitute sufficient physical harm upon which to base a claim for damages.... We base this on the present state of negligence and products liability law in Kentucky. (citations omitted). But until such time as the plaintiff can prove some harmful result from the exposure, albeit he need not prove he is already suffering from cancer, his cause of action has yet to accrue.

*Id.* at 195.

A parallel can be drawn in the case at bar. A building owner who has merely discovered the presence of asbestos should not have a

cause of action until the asbestos creates an "injury" through its release and contamination. Therefore, we find that if confronted with the issue, the courts of Kentucky would require a "contamination" of the environment as a prerequisite to accrual of an asbestos property damage action.

Additionally, this court is of the opinion that requiring "contamination" of the surrounding environment is the most sound rationale. As stated by the Tenth Circuit in *Adams–Arapahoe School Dist. No. 28–J v. GAF Corp.*, 959 F.2d 868 (10th Cir.1992):

> This basic tort principle makes clear that damages may not be awarded for injuries not yet suffered. Importantly, the "asbestos in buildings" cases cited by both parties adhere to this same principle. Tort actions can be maintained only where plaintiffs explicitly allege and subsequent evidence demonstrates contamination of the building or other property as a result of fibers released from asbestos products. In other words, only asbestos contamination constitutes a physical injury compensable under tort laws.

*Id.* at 873.

Requiring "contamination" before accrual of an asbestos property damage action is well-established. *See Heider v. W.R. Grace & Co.*, No. 89–C–9067, 1990 WL 129347, at *2, 1990 U.S.Dist. LEXIS 11137, at *5 (N.D.Ill. Aug. 21, 1990) ("contamination" a prerequisite for accrual of an asbestos property damage claim); *Kansas City v. W.R. Grace & Co.*, 778 S.W.2d 264, 268 (Mo.App. W.D.1989) ("In order for a cause of action in tort for asbestos contamination to accrue, release of toxic asbestos fibers into the environment is necessary together with the ability to ascertain a substantial and unreasonable risk of harm from the release of the toxic asbestos fibers."); *May v. AC & S, Inc.* 812 F.Supp. 934, 942 (E.D.Mo.1993) (holding "contamination" required before cause of action accrued).

USMP takes the position here that this cause of action accrued when the property owner acquired knowledge of both the presence of asbestos and its dangerous propensities. If we were to accept this argument, a property owner would be forced to initiate litigation regardless of whether the asbestos had yet to pose an immediate health risk through its release. We reject this rationale.

We would note in passing that USMP has taken an exactly opposite position in other litigation. *See City of Wichita, Kansas v. U.S. Gypsum Co., et al,* 828 F.Supp. 851 (D.Kan.1993). In that case, it joined a successful summary judgment motion which requested dismissal of claims for the threat of future release of asbestos fibers without actual "contamination." We do not expect USMP to make the same arguments in all cases. As Emerson once observed, "A foolish consistency is the hobgoblin of little minds."[1] However, the fact that USMP has on at least one occasion espoused the view we express here gives us some level of comfort.

■ We conclude that summary disposition of Agribank's remaining three claims is inappropriate. This action was filed on February 28, 1991.[2] Employing a five-year statute of limitation period would fix February 28, 1986 as the date before which Agribank's claims could not have accrued. Agribank's evidence tends to suggest that it was not until September of 1988 that it learned its building had been "contaminated" with asbestos fibers. This would be well within the limitations period. Accordingly, USMP's motion for summary judgment is **DENIED**. USMP may now resubmit its previously-filed alternative motion relating to damages.

**IT IS SO ORDERED.**

---

1. Quoted in *Reynolds v. C.I.R.*, 861 F.2d 469, 472 (6th Cir.1988).

2. For further discussion on actual date this action was filed, see fn. 1 to our previous opinion dated January 6, 1994.