Chad WATTS, As Infant By and Through his Mother and Legal Guardian, Elizabeth WATTS, Appellant,

v.

K, S & H, A Partnership; Gary Stingle, Individually and Partner in K, S & H; William David Hammons, Individually and Partner in K, S & H; and Hugh King, III, Individually and Partner in K, S & H, Appellees.

Hugh KING, Appellant,

v.

Chad WATTS, As Infant By and Through his Mother and Legal Guardian, Elizabeth WATTS, Appellee.

Nos. 95–SC–189–DG, 95–SC–837–DG.

Supreme Court of Kentucky.

Oct. 2, 1997.

Rehearing Denied Jan. 22, 1998.

Thomas K. Herren, Herren & Adams, Lexington, Donald P. Moloney, II, Sturgill, Turner & Truitt, Lexington, for Watts.

Larry Wayne Cleveland, Young, Cleveland & Ayer, Catherine C. Staib, Frankfort, for K, S & H, Gary Stingle and William David Hammons.

Robert S. Miller, Harry B. Miller, Jr., Miller, Griffin & Marks, P.S.C., Lexington, for Hugh King, III.

STUMBO, Justice.

Appellant, Chad Watts (hereinafter "Chad"), received severe and permanent injuries in a head-on collision which claimed the life of his father, Dan Watts. Todd Neal (hereinafter "Neal"), the teenage driver of the car which caused the accident, was also severely injured, and his teenage passenger was killed. Suit was filed against, and a settlement reached with, the Neal family. Chad, through his next friend and guardian, Elizabeth Watts, then brought this action against Appellees, a partnership and the individuals who owned the Newtown Spirits Shoppe. A jury trial was held and an award in excess of six million dollars was returned, apportioned 70% to Neal and 30% to the Appellees.

On appeal, the Court of Appeals reversed and directed dismissal of the action, holding that Chad had improperly split his cause of action by filing separate suits against Neal and the Appellees herein. We granted discretionary review to consider that issue as well as a myriad of other questions raised in the lower court and asserted in the Court of Appeals, but not addressed there.

*THE FACTS:*

Given the complexity of the issues presented, a detailed recitation of the facts is necessary. On November 16, 1984, Neal, Jeff McMillan (hereinafter "McMillan"), Doug Charles (hereinafter "Charles"), and Harold Brandenburg (hereinafter "Brandenburg"), all sixteen-year-old students at Scott County High School, skipped school to spend the day in Lexington. Brandenburg was driving his automobile, with the others as passengers. At some point, either near nine or ten a.m., depending on whose testimony you believe, they stopped at the Newtown Spirits Shoppe, where Charles went inside and purchased a case of beer and a pint of rum. At trial,

Charles testified that he did not use false identification to make the purchase and that he was not asked for proper identification. Whether the clerk at the shop could see Brandenburg's car and the other teenagers inside it is also disputed.

The alcohol was consumed by Charles, McMillan and Neal. Only Charles and Brandenburg testified at trial. McMillan died in the crash and Neal was severely injured and was not called as a witness.

The boys spent the rest of the day visiting with friends and playing pool. Exactly how much alcohol each boy consumed is unclear. The four returned to school at dismissal time and Neal and McMillan left in Neal's car. While passing on a double-yellow line, Neal swerved to avoid a head-on collision with a concrete truck, lost control of his car, and struck the Watts vehicle head-on. Other witnesses testified that Neal had been driving recklessly immediately prior to the accident and there was an eyewitness to the collision who testified as well. As previously stated, Chad was catastrophically injured and his father was killed.

At trial, Appellees attempted to show that the severity of Chad's injuries was attributable, in part, to the failure of his father to secure him in a child restraint or seat belt. Because Appellees did not join Dan Watts' estate as a party, Appellees were limited in their attempt to place fault on Dan and the trial court refused to include Dan's negligence in the apportionment instruction. (Appellant contends, and the record supports this contention, that the trial judge refused to allow the instruction because there was insufficient evidence to support the giving of an apportionment instruction on that ground.)

Other evidentiary matters contested on appeal are the admissibility of blood and urine test results obtained by the investigating officer and whether Elizabeth Watts committed fraud upon the court by failing to disclose to the court and jury that she had remarried.

## I. DID APPELLANT IMPROPERLY SPLIT HIS CAUSE OF ACTION?

As stated before, Appellant first filed suit against the driver of the automobile at fault in the collision, the owner of the car, and an associated business. A settlement was reached in that action, resolving claims brought by Dan Watts' estate, by Elizabeth Watts for her loss of consortium, and by Elizabeth on Chad's behalf.

This action was then filed solely on Chad's behalf by Elizabeth as next friend and guardian. Following entry of the judgment, this appeal was brought by Appellees. Before the Court of Appeals, Appellees presented a number of arguments, including that the trial court erred in failing to allow an instruction that would permit apportionment of fault to Chad's father for failing to secure Chad in a seat belt, that laches should be applied to prevent the bringing of this action because of the delay in filing suit against Appellees, and that the trial court impermissibly extended the dram shop rule by allowing the imposition of liability when the sale of the liquor was not made directly to the tortfeasor.

The Court of Appeals used a combination of the laches argument and the dram shop argument to arrive at the resolution that:

This appears to be a case in which the plaintiff has been allowed to split her cause of action and try it piecemeal, contrary to the subsidiary res judicata rule making that theory applicable not only to the issues disposed of in the first action, but to every point which properly belonged to the subject of that action. *Egbert v. Curtis*, Ky.App., 695 S.W.2d 123 (1985), citing *Hays v. Sturgill*, 302 Ky. 31, 193 S.W.2d 648 (1946). The rule against splitting causes of action is an equitable one which limits all causes of action arising out of a single "transaction" to a single suit rather than proceeding piecemeal in multiple actions. *Capital Holding Corp. v. Bailey*, Ky., 873 S.W.2d 187 (1994). Here the equities do slant in favor of the partnership. It is interesting that the liquor store was not mentioned at all in the 1985 action against the drunk driver and that this suit was commenced about six months after the release of *Grayson Fraternal Order of Eagles v. Claywell*, Ky., 736 S.W.2d 328

(1987), but about four months before the effective date of KRS 413.241. That statute was specifically limited to actions filed after July 15, 1988; *Grayson* was not specifically stated to be either retroactive or prospective. This is not to say that this cause of action against the owners of the liquor store, if valid under the principles set forth in *Grayson*, did not accrue prior to the rendering of that case: that represents a shift in common law which could have been asserted by Watts against K, S & H in the 1985 action as it was asserted at about that time by Claywell against the Grayson Fraternal Order of Eagles. Not only could it have been asserted at that time but it should have been asserted at that time and Watts' failure to do so constitutes an impermissible splitting of a cause of action which we cannot allow.

■ It is our opinion that the Court of Appeals has erred in two ways in reaching that particular result: it has based its ruling on an issue that was not raised on appeal, and, in doing so, has misconstrued the rule against the splitting of actions. When the rule against splitting causes of action is examined, it becomes clear that the rule is a subsidiary of the doctrine of res judicata, a defense which must be affirmatively pled. *Egbert, supra*, at 124; CR 8.03.

■ A thorough search of the record reveals that the defense was not specifically pled, but was asserted via a motion for summary judgment. The motion was denied by the trial court. Following the trial, Appellees' appeal raised a wide range of issues, but the closest the brief came to this particular claim of error was to argue that laches should have been used as a bar to this suit, an argument in equity rather than procedure. As previously stated, the court used the laches argument as a springboard to the grounds for reversal. Rather than basing our ruling on this procedural ground, however, we will address the correctness of the substantive ruling.

The cases cited by all parties to this action are *Egbert, supra; Hays, supra;* and *Capital Holding, supra.* We also have reviewed *Kirchner v. Riherd*, Ky., 702 S.W.2d 33 (1985), wherein this Court set forth the basis for the rule against splitting causes of action and the legal reasoning therefore, saying:

> The theory for the prohibition against splitting a cause of action is barred largely on the ground that fairness to the defendant and sound judicial administration require that at some point litigation over a particular controversy be brought to a final conclusion.

*Kirchner, supra*, at 35.

The operative and important words in *Kirchner* and *Egbert* are "the defendant," which refer to the defendant in the first action, against whom all claims must be raised at the time that action is brought. *Kirchner* concerned claims arising from an automobile accident which were brought successively in the small claims and circuit courts. *Id.* at 33. *Egbert* involved the same scenario, with the exception that the claim not brought should have been asserted as a compulsory counterclaim against the plaintiff in small claims court rather than being brought as a third-party claim in the circuit court action. *Egbert, supra*, at 124. Thus, the teaching of these cases is that when you sue a defendant in regard to a single transaction or event, you must raise all claims arising from that transaction or event.

*Hays*, however, is a more complex opinion involving successive suits between the same parties concerning a deed. The first suit concerned the construction of the instrument, answering the question of whether the document was a deed or a will. The subsequent action concerned whether the grantor was of sound mind or acting under undue influence and whether certain payments were required under the terms of the deed. *Hays, supra*, 193 S.W.2d at 649. The earlier action was asserted as a bar, and the trial court dismissed. On appeal, the then Court of Appeals noted:

> The general rule for determining a question of res judicata embraces several conditions. The element primarily involved in this case is the question of identity of the two causes of action. The appellant denies identity....

> [O]nly the construction of the writing was involved in the first case. Specifically, the

issues were as to the character of the instrument, the identity of the grantees, and the kind of title conveyed. As to whether those whom the court decided were granted the title took it subject to a trust in favor of the other heirs was a question not raised.

*Id.* at 649–50

Having held that further construction of the deed was a point which properly belonged to the prior litigation, the Court next considered whether the challenge to the execution of the document was likewise barred. Concluding that it was not, the Court said:

A decree of construction of a deed or will does no more than to ascertain and determine the intent of the grantor or testator, as the case may be. It does not change its status nor augment or diminish its binding force.... So an action contesting the validity of deed is essentially upon a plea of non est factum, while a suit to construe the instrument is merely to ascertain the grantor's intention. A suit seeking to have it adjudged void because of incapacity to have any intention is an entirely different matter.

*Id.* at 651.

Thus the Court held that even successive suits between the same parties concerning the same instrument were not necessarily forbidden by the rule against splitting causes of action. This is so because the prior judgment is not necessarily conclusive of matters which were "not germane to, implied in or essentially connected with the actual issues in the case although they may affect the ultimate rights of the parties and might have been presented in the former action." *Hays, supra,* at 648, quoting 34 C.J.S. 823, 911.

The most recent case on the subject from this Court is *Capital Holding, supra,* wherein the plaintiffs in an asbestos suit sought to bring claims for both outrageous conduct causing severe emotional distress and negligence claims for exposure to asbestos fiber against the same defendant. Therein, this Court ruled that the claimants' severe emotional distress claim should be allowed to proceed to trial, but that the negligence suit was not yet ripe for adjudication because there was not yet any evidence that the

asbestos exposure had caused an injury, there being no physical manifestations of injury shown. We noted that the rule against the splitting of actions

has a number of exceptions, and the present situation provides such an exception because the plaintiffs cannot sue on the negligence claim before the cause of action accrues. This is the same equitable consideration that underlies the decision in the *Louisville Trust Co. v. Johns–Manville Products Corp.,* Ky., 580 S.W.2d 497 (1979), case, extending the discovery rule to a claim otherwise cut off by a statute of limitations, and it is a corollary to our refusal to recognize a statute of repose cutting off a cause of action before it exists. *See Tabler v. Wallace,* Ky., 704 S.W.2d 179 (1985).

*Capital Holding, supra,* at 193.

The teachings of these cases are that to utilize the defense that the plaintiff has improperly split the cause of action, the actions must both involve the same parties and the "relitigation of the same facts and issues." *Egbert, supra,* at 124. Additionally, the defense cannot be used to cut off a cause of action before it accrues. Each of these cases in essence demonstrates the application of the *Restatement (Second) of Judgments,* § 49 and 50, particularly that in § 49 which states: "A judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefore."

■ In the instant case, the issues were whether the Appellees, their agents, or employees negligently sold alcoholic beverages to a minor; whether they negligently failed to ascertain the age of the purchaser of the beverages; whether they knew, or should have known, the purchaser was a minor; whether they knew, or should have known, that the underage purchaser would share the beverages with other minors who consumed them; and whether that consumption resulted in the motor vehicle collision that caused the damages sought compensated. The parties are Chad Watts, by his next friend, and the Appellee.

The earlier action brought against the teenage driver of the other vehicle sought damages for Chad Watts, individually, for his personal injuries; for the estate of his father, and for the father's personal injury and pain and suffering; for Chad's brother for the loss of parental consortium; and for Elizabeth Watts for her loss of consortium. Also named as defendants were the driver's parents and the corporate owner of the vehicle. Put simply, at issue were the negligent entrustment to, and operation of, the vehicle by the teenager, and the causation and magnitude of the damages suffered by the named plaintiffs.

Theoretically, all of these claims could have been litigated in the same action, along with others that the fertile imagination of experience might devise, such as a cross-claim by the Neal family against current Appellees for negligence in selling the alcoholic beverages to the purchaser who may have negligently provided them to their son, as well as an action against that minor's parents since they are, perhaps, responsible for his actions. A broad reading of that part of *Egbert* which states that "res judicata [is] applicable not only to the issues disposed of in the first action, but to every point which properly belonged to the subject of the litigation in the first action and which in the exercise of reasonable diligence might have been brought forward at the time," would foreclose all possible or potential claims against any known potential defendant not brought within the first litigation. *Egbert, supra,* at 124. The rule is simply not that broad, nor is it that simple to apply. The Court of Appeals erred in its holding.

## II. DID THE TRIAL COURT IMPERMISSIBLY EXTEND THE DRAM SHOP RULE?[1]

Appellees contend that the trial court allowed an impermissible extension of the dram shop rule, in that the purchaser of the alcoholic beverages in this case was not the driver of the automobile that collided with Chad's vehicle. That the underage purchaser would share the beverages with another underage person who would then get behind the wheel of a vehicle other the one the purchaser rode in is, Appellee argues, a situation "where the court [should] conclude as a matter of law that it was clearly unreasonable to foresee the potential harm...." *Grayson, supra,* at 334.

Appellant has argued that his complaint is clearly patterned on *Pike v. George,* Ky.App., 434 S.W.2d 626 (1968), and that the trial court permitted the suit to proceed because it recognized the evidence fit the standards set forth in that case. *Pike* is an opinion reversing a summary judgment granted for failure to state a claim upon which relief could be granted. *Id.* at 626. In *Pike* the facts alleged that a sale of alcohol was made to three minors and that the vendor "knew that the minors would 'drink the liquor at once and thereafter operate and travel together in a motor vehicle on the public highways,'" lose control of the vehicle and that injuries would result to one of the passengers. *Id.* at 627. Citing the special protections afforded to minors, *id.* at 629, and the statutory prohibitions against alcohol sales to minors, the Court stated that it was "unwilling to say that there are no circumstances under which a licensee who sells alcoholic beverages may be held responsible in damages proximately resulting from the violation of" the law prohibiting the sale of alcohol to minors. *Id.* at 629. In reaching this result, the Court extensively discussed the issue of whether it was the sale of the substance or the consumption that was the proximate cause of the injury; however, the issue of the sharing of the alcohol was not addressed. Nor does the opinion discuss the possibilities of whether the vendor of the alcohol was aware that the purchaser was accompanied by other minors. But then the record was not developed to any degree and the merits of the case were not disposed of.

We must look to the discussion in *Grayson* for the standard by which this case is to be judged.

---

1. This action accrued prior to the Kentucky General Assembly's amendment of KRS 413.241(1), which now "finds and declares that the consumption of intoxicating beverages, rather than the serving, furnishing or sale of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or another person."

Civil liability is predicated on the duty of reasonable care which is owed by each of us to everyone else, the negligence principle. . . . [T]he question of proximate cause is a factual one, not a legal one, depending upon whether the evidence shows that the results of the misconduct are reasonably foreseeable. The question of whether the appellees will be able to present proof of circumstances sufficient to infer that the defendant knew, or should have known, of the likely results of his conduct, or whether the results were beyond the foreseeable risk, [is] to be decided *after* the evidence has been presented. We hold simply that the standard expressed in the statute, the violation of which could result in a criminal sanction against a licensee, is misconduct of a nature which will result in civil liability under the negligence principle, as a failure to exercise reasonable care, when the evidence establishes circumstances from which a jury could reasonably infer that the subsequent accident was within the scope of the foreseeable risk. . . . [T]he question of foreseeable risk is covered by the usual instruction relating to proximate cause, which is an issue framed for the jury in terms of whether the misconduct was a "substantial factor."

*Grayson, supra,* at 333–34 (emphasis added) (citing *Collins v. Galbraith,* Ky., 494 S.W.2d 527 (1973)).

■ The evidence being in, we then must now determine whether, as a matter of law, reasonable minds could not differ in finding that the facts indicate a scenario which was clearly unforeseeable by Appellees. Keeping in mind that this case was contested on every issue, beginning with whether Appellees' store was the source of the alcohol purchased, and whether the clerk could have seen the car the teenagers were riding in at the time the purchase was made, we think it is not clearly unforeseeable that a member of a group of underage boys, who purchased a case of beer and a pint of rum on a school morning, would share his purchase with his companions and that one or more of those companions would drive that or another automobile, causing a disastrous collision. The

Court in *Pike* contemplated just such a fact situation in allowing the cause of action to proceed. Although cautiously worded, that decision in no way forecloses this particular suit. Certainly, the proof issues are difficult and complex, but we have considered the record carefully and believe that this case was properly submitted to the jury to determine whether Appellees violated their statutory duty and whether that violation led to a series of events that could have been foreseen.

## III. DID THE FAILURE OF ELIZABETH WATTS TO REVEAL HER REMARRIAGE CONSTITUTE A FRAUD ON THE COURT AND PERJURY?

■ The simple answer to this question is, no. The only claim litigated in this action was Chad's. No recovery was sought for Elizabeth Watts, his next friend and guardian. Just as in a wrongful death action, where the remarriage of the surviving spouse is inadmissible because of the danger of prejudice, the fact that Elizabeth Watts had remarried has no place in this action. *Adams v. Davis,* Ky.App., 578 S.W.2d 899 (1979). We cannot improve upon the reasoning adopted by Judge Knox and set it forth verbatim:

In this case, the issue presented to the jury, once liability had been established, related only to the damages suffered by Chad Watts. No part of the Plaintiffs' claim appears to have been related to damages incurred by Elizabeth Wetzel.[2]

Although the Defendants present an argument that they might have been able to argue to the jury that the jury could have considered the factor of a "man around the house" in determining future care damages for Chad Watts, this Court believes that the damages awarded to the Plaintiffs were categorized as future care costs relating to institutional and medical costs. For that reason, this Court *does not believe* that it can conclude that, considering the inadmissibility of evidence of Mrs. Wetzel's remarriage based upon the prejudice that evidence would have resulted to Chad Watts, and considering that no item of

**2.** Elizabeth Watts changed her name to Elizabeth Wetzel after her subsequent remarriage.

damages awarded to the Plaintiffs could reasonably be said to be affected by disclosure of Mrs. Wetzel's remarriage, the Defendants have demonstrated prejudice by the nondisclosure of Mrs. Wetzel's remarriage. (Emphasis added.)

## IV. DID THE TRIAL COURT IMPROPERLY REFUSE TO ALLOW AN APPORTIONMENT · INSTRUCTION AGAINST CHAD'S FATHER?

Appellees strongly argue that the trial court improperly refused an instruction that would have permitted apportionment against Chad's father because the child was not in a child restraint. We have reviewed the record and find that the trial court held that insufficient evidence had been submitted "to justify a determination that the other entities sought by the Defendant to be named as persons against whom apportionment should be made substantially contributed to the cause of Chad Watts' injuries." We agree with the trial court in its ruling.

### OTHER ISSUES

■ Other issues have been raised, primarily in the Appellees' cross-appeal, that we have considered and rejected. Included is the argument that laches should provide a bar to the bringing of this suit because the lapse in time between the collision and the suit severely prejudiced their ability to defend due to weakened memory and the destruction of business records of the liquor store. This action was brought within three and one-half years of the injury, well within the period permitted by the statute of limitations that applies for injuries suffered by minors. Appellees were able to mount a vigorous defense with a wide range of witnesses and persuaded the jury to limit their liability to thirty percent of the damages. We find no undue prejudice to their presentation of the case.

Appellees argued that this case had actually been settled by the parties prior to trial. The settlement contemplated certain evidentiary concessions by Appellees, with Watts then agreeing to forbear execution against the individual partners and a cooperative effort on certain insurance claims. The issue was properly · submitted to the trial court, which held a hearing and determined that there had been no meeting of the minds. We will not disturb this finding. Nor do we agree that the settlement of the first suit against the teenage driver and his family released all other claims or that to allow this recovery constitutes an improper double recovery. Again, these issues were reviewed by the trial court, appropriate findings were made, and we do not disturb them.

### CONCLUSION

In summary, we do by this Opinion, reverse the Opinion of the Court of Appeals and thereby reinstate the Judgment of the Scott Circuit Court. We must stress that this is a narrowly drawn decision, based upon a very specific and peculiar set of facts. In the interim between the tragic events that gave rise to this suit and rendition of this decision, there have been modifications to the applicable statutes and changes in the common law that are not accounted for herein.

COOPER, GRAVES, LAMBERT and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents by separate opinion, in which JOHNSTONE, J., joins.

STEPHENS, Chief Justice, dissenting.

The result reached in this case is, in my opinion, a textbook example of the improper extension of *Grayson Fraternal Order of Eagles v. Claywell,* Ky., 736 S.W.2d 328 (1987). While the injury to appellant is horrendous, I am in no way convinced of the foreseeability of that injury.

A brief recitation of the facts serve to show that this case does not lend itself to an extension of *Grayson.* At some point between 9:00 a.m. and 10:00 a.m. Brandenburg drove Charles, McMillan, and Neal to the Newtown Spirits Shoppe where Charles purchased alcoholic beverages that were shared among three of the four boys. The boys spent the remainder of the day together until around the time of school dismissal. At that point they returned to school where Neal and McMillan left the group and proceeded in

Neal's car with Neal at the wheel. It was then that the collision occurred.

It is more than notable that Neal, the driver of the automobile that injured Chad, was not the purchaser of the alcohol, nor was the car being driven by Neal the one that the boys had used earlier in the day. Due to these facts alone the sale to Charles, although prohibited by statute, was not the proximate cause of the injuries to Chad.

KRS 244.080(1) makes it illegal to sell alcoholic beverages to a minor.

[T]his statute [KRS 244.080] identifies a standard of care imposed upon commercial vendors for the protection of the public, which includes both the consumer and third parties, when the factual circumstances are such that the vendor should reasonably foresee what might result. *Grayson*, at 333.

Grayson, arguably can be used against a package liquor store in the case of a purchase by a minor, however liability should not extend beyond the actions of that purchaser. Furthermore, in this case there is evidence that Neal may have become intoxicated through the use of alcohol other than that purchased at the Newtown Spirits Shoppe.

Dram shop liability should be limited to the purchaser and persons injured by him. Anything beyond that is unforeseeable and unreasonably extends the scope of liability.

The trial court's extension of liability to benefit someone injured by a third party with whom the purchaser shared the beverages, clearly ignores the issue of superseding causes. The missing element in this case is foreseeability. The trial court ignored the intervening acts, that were more than sufficient to remove the sale of liquor to Charles as a proximate cause of Chad's injuries.

I would affirm the Court of Appeals, but for the reasons set forth in this opinion only.

JOHNSTONE, J., joins this dissenting opinion.