**Vanessa PRIEST, Individually, and as Administratrix of the ESTATE OF Jonathan PRIEST, Deceased, Appellant,**

v.

**The BLACK CAT, INC.; Unknown Defendants; Tony Midkiff; Susan Midkiff and Beth Boling, Appellees.**

No. 2000–CA–00573–MR.

Court of Appeals of Kentucky.

July 13, 2001.

Discretionary Review Denied by Supreme Court June 5, 2002.

William J. Rudloff, Bowling Green, KY, for Appellant.

Marvin P. Nunley, Owensboro, KY, for Appellee, The Black Cat, Inc.

Michael D. Hallyburton, Madisonville, KY, for Appellees, Tony Midkiff and Susan Midkiff.

Before BUCKINGHAM, JOHNSON and TACKETT, Judges.

*OPINION*

JOHNSON, Judge:

Vanessa Priest, Individually, and as Administratrix of the Estate of Jonathan

Priest, Deceased, has appealed from a summary judgment entered by the Daviess Circuit Court on February 22, 2000. The summary judgment dismissed Priest's complaint which had alleged that the negligence of the appellee, The Black Cat, had caused her son's death. Having concluded that there is a genuine issue of material fact involving the alleged illegal sale of alcohol to a minor; the transfer of the alcohol to Jonathan, who was a minor; and whether the intoxicated minor's drowning was foreseeable, we hold that The Black Cat was not entitled to a summary judgment as a matter of law. Accordingly, the summary judgment is reversed and this matter is remanded.

Priest's complaint alleged that The Black Cat was negligent in illegally selling alcohol to another minor purchaser, and that it was foreseeable that this minor would give the alcohol to Priest, who might become intoxicated and drown. Since Priest's complaint was dismissed by summary judgment, in our review we must view the facts in a light most favorable to Priest. It is uncontradicted that on June 1, 1998, six friends from Fordsville, Kentucky, met each other at a local gas station. At the time of these events five of the friends, Jared Midkiff, Star Frizzell, Jason Doyle, Beth Boling, and Jonathan Priest were minors. Jared's brother Aaron was the sixth friend and he was of legal age. The six friends decided that they wanted to purchase some alcohol. All six of them got into Boling's Ford Thunderbird, because it was the largest vehicle, and drove to The Black Cat liquor store. With Boling driving, they pulled up to the drive-through window and used their pooled money to purchase a fifth of Wild Turkey bourbon. According to the surviving five friends, The Black Cat's sales clerk did not ask Boling her age or ask her to produce any identification.

After purchasing the liquor, the group went to a trailer that was located on the property of Tony and Susan Midkiff, the parents of Aaron and Jared. This trailer was apparently a hangout for the teens where they played music and partied. The Midkiffs' home was a few hundred yards from the trailer. In between the trailer and the Midkiffs' home was a pond. Around midnight that night, after the group had drunk all or nearly all of the bourbon, they decided to go skinny dipping in the Midkiffs' pond.

According to all accounts, the group of friends swam for about 30 to 45 minutes. Everyone there remembers seeing Jonathan swimming. At some point when everyone but Jonathan was out of the pond, they noticed that Jonathan's clothes were still on the ground. The group then made extensive efforts to locate Jonathan. They searched the pond, the surrounding woods, the trailer, and went to Jonathan's home to see if he had returned there as a practical joke. In the early morning hours of June 2, 1998, the local rescue squad was called and its members retrieved Jonathan's body from the pond.

On December 11, 1998, Vanessa Priest filed a complaint, individually as Jonathan's mother and as the administratix of his estate, against The Black Cat, Inc. On February 26, 1999, depositions were taken of the five surviving friends who had participated in purchasing the alcohol from The Black Cat. Subsequent to the depositions, The Black Cat filed a third-party complaint against Tony and Susan Midkiff, the owners of the farm and pond where Jonathan drowned, and also against Boling, the minor who purchased the alcohol. The case was set for a trial on February 14, 2000.

On February 7, 2000, the Daviess Circuit Court heard oral arguments on The Black Cat's motion for summary judgment.

On February 22, 2000, the trial court granted The Black Cat's motion for summary judgment and dismissed Priest's complaint. This appeal followed.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] In *Paintsville Hospital Co. v. Rose,*[2] the Supreme Court of Kentucky held that for summary judgment to be proper the movant must show that the adverse party cannot prevail under any circumstances. The Court has also stated that "the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor."[3] The standard of review on appeal of a summary judgment is whether the trial court correctly found that there was no genuine issue as to any material fact and that the moving party was entitled to judgment as a matter of law.[4] There is no requirement that the appellate court defer to the trial court since factual findings are not at issue.[5] "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor."[6]

Priest argues that The Black Cat is subject to civil liability for violating KRS[7] 244.080.[8] Under this statute it is a misdemeanor for a retail licensee, such as The Black Cat, to sell an alcoholic beverage to a minor, and Kentucky Courts have previously found a violation of this statute as a basis for civil liability.

*Pike v. George,*[9] was the first Kentucky case of significance to address this issue. In *Pike,* three minors purchased liquor from a retail liquor store in violation of KRS 244.080. Pike was injured when he wrecked his vehicle after consuming the alcohol. In rejecting the common law rule, the Court stated:

> [W]e are unwilling to say that there are no circumstances under which a licensee who sells alcoholic beverages may be

---

1. Kentucky Rules of Civil Procedure (CR) 56.03.

2. Ky., 683 S.W.2d 255 (1985).

3. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476, 480 (1991).

4. *Scifres v. Kraft,* Ky.App., 916 S.W.2d 779, 781 (1996).

5. *Goldsmith v. Allied Building Components, Inc.,* Ky., 833 S.W.2d 378, 381 (1992).

6. *Steelvest, supra* at 480.

7. Kentucky Revised Statutes.

8. KRS 244.080 provides:

   A retail licensee shall not sell, give away, or deliver any alcoholic beverages, or procure or permit any alcoholic beverages to be sold, given away, or delivered to:
   (1) A minor, except that in any prosecution for selling alcoholic beverages to a minor it shall be an affirmative defense that the sale was induced by the use of false, fraudulent, or altered identification papers or other documents and that the appearance and character of the purchaser were such that his or her age could not have been ascertained by any other means and that the purchaser's appearance and character indicated strongly that he or she was of legal age to purchase alcoholic beverages. This evidence may be introduced either in mitigation of the charge or as a defense to the charge itself.
   Pursuant to KRS 244.990(1) a first offense is a Class B misdemeanor and a second and each subsequent offense is a Class A misdemeanor.

9. Ky., 434 S.W.2d 626 (1968).

held responsible in damages proximately resulting from the violation of KRS 244.080.[10]

The Court held that the trial court's dismissal of Pike's claim based on a failure to state a claim was erroneous, and Pike was allowed to have a jury determine whether his injury was a foreseeable result of the liquor store's violation of KRS 244.080.[11]

In *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*,[12] the plaintiff alleged that the club sold alcohol in a dry option territory to an already intoxicated club member. The club's bartender testified at his deposition that he had to literally force two patrons out of the bar so he could close. He also physically forced them into their car and made them leave the parking lot so he could close the parking lot gate. After leaving the club's premises, the two intoxicated patrons carelessly, negligently, and recklessly ran into a police car which resulted in the death of one officer and substantial injuries to another.

In discussing Kentucky's law related to dram shop liability, the Supreme Court stated:

The rule is that every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury [citations omitted]. This is an old rule, and a good one. There is no reason to create a privilege against, or an immunity from, its application to dram shop liability.[13]

The Court went on to interpret *Pike* as follows:

Both sides argue that *Pike v. George*, *supra*, is precedent for their position in this case. The argument hinges on whether the factual difference between *Pike* and this case makes a legal difference. *Pike* recognized common law dram shop liability premised upon selling liquor to a minor. The present case premises liability on selling liquor to an intoxicated person. The appellants argue that minors are "special" and the theory of liability is not transferable. The flaw in this argument is that there is nothing "special" about the negligence premise underlying liability in both instances, i.e., the intoxicated person and the minor are high risk *drinkers, with substantial likelihood that selling them liquor will cause such person to have an accident.* [emphasis original].[14]

The Court continued with the following discussion concerning KRS 244.080:

This is a criminal statute and not a dram shop act. The statute does not *per se* impose liability in tort for violation of its terms. But this statute identifies a standard of care imposed upon commercial vendors for the protection of the public, which includes both the consumer and third parties, when the factual circumstances are such that the vendor should reasonably foresee what might result.[15]

The Court in *Grayson* made it clear that the key issue to consider is whether the injury suffered was a foreseeable result that was caused by the violation of the statute. The Court stated:

Civil liability is predicated on the duty of reasonable care which is owed by each of us to everyone else, the negligence principle.... [T]he question of proxi-

---

**10.** *Id.* at 629.

**11.** *Id.*

**12.** Ky., 736 S.W.2d 328 (1987).

**13.** *Id.* at 332.

**14.** *Id.* at 332–33.

**15.** *Id.* at 333.

mate cause is a factual one, not a legal one, depending upon whether the evidence shows that the results of misconduct are reasonably foreseeable. The question whether the appellees will be able to present proof of circumstances sufficient to infer that the defendant knew, or should have known, of the likely results of his conduct, or whether the results were beyond the foreseeable risk, remains to be decided *after* the evidence has been presented. We hold simply that the standard expressed in the statute, the violation of which could result in a criminal sanction against a licensee, is misconduct of a nature which will result in civil liability under the negligence principle, as a failure to exercise reasonable care, when the evidence establishes circumstances from which a jury could reasonably infer that the subsequent accident was within the scope of the foreseeable risk. Except in such cases where reasonable minds could not differ, where the court would conclude as a matter of law that it was clearly unreasonable to foresee the potential harm from the misconduct involved, the question of foreseeable risk is covered by the usual instruction relating to proximate cause which is an issue framed for the jury in terms of whether the misconduct was a "substantial factor" [citation omitted].[16]

In *Watts v. K, S & H*,[17] the plaintiff received a damage award in a jury trial on his negligence claim against a liquor store. The case involved four minor high school students who skipped school. Sometime in the morning, they purchased some alcohol from a liquor store in Lexington, Kentucky. The minor purchaser did not use false identification nor was he asked to produce identification by the clerk at the

store. The four teenagers consumed the alcohol and went back to school at dismissal time.

After school was over, two of the teenagers, neither of whom was the direct purchaser of the alcohol, while driving under the influence were involved in a head-on automobile collision. The collision killed Watts' father and left him catastrophically injured. Watts sued the liquor store that had sold the alcohol to the boys.

The Court held that whether the liquor store could be held liable under the dram shop rule for Watts' injuries was a question for the jury:

[W]e [ ] must now determine whether, as a matter of law, reasonable minds could not differ in finding that the facts indicate a scenario which was clearly unforeseeable by Appellees. Keeping in mind that this case was contested on every issue, beginning with whether Appellees' store was the source of the alcohol purchased, and whether the clerk could have seen the car the teenagers were riding in at the time the purchase was made, we think it is not clearly unforeseeable that a member of a group of underage boys, who purchased a case of beer and a pint of rum on a school morning, would share his purchase with his companions and that one or more of those companions would drive that or another automobile, causing a disastrous collision. The Court in *Pike* contemplated just such a fact situation in allowing the cause of action to proceed. Although cautiously worded, that decision in no way forecloses this particular suit. Certainly, the proof issues are difficult and complex, but we have considered the record carefully and believe that this case was properly submitted to the jury

**16.** *Id.* at 333–34.

**17.** Ky., 957 S.W.2d 233 (1997).

to determine whether Appellees violated their statutory duty and whether that violation led to a series of events that could have been foreseen.[18]

In *Watts*, the minor who caused the collision was not the minor who purchased the alcohol. The issue was whether the injuries were a foreseeable consequence of the liquor store selling alcohol to the minors. In *Watts*, only one of the minors went into the liquor store and it was disputed as to whether the clerk could see the others outside. In the case *sub judice*, Boling purchased the alcohol at a drive-through window with six individuals in the vehicle and within the view of the clerk.

A majority of our state courts have imposed dram shop liability when there was a sale to one minor who subsequently transferred the alcohol to another minor who then became intoxicated and caused an injury.[19] This extension of dram shop liability recognizes that it is very likely, and thus foreseeable, that a minor purchaser is going to share his alcohol with a friend, and that the friend will become intoxicated and cause injury to another person. In fact, in many cases the quantity of alcohol purchased would suggest that more than one person is going to drink the alcohol or that the alcohol is going to be used at a party.

In the case *sub judice*, the trial court dismissed Priest's complaint based on *Isaacs v. Smith*,[20] Kentucky's most recent

dram shop case. In its order dismissing the complaint, the trial court stated:

After careful consideration, the Court has concluded that drowning is not a foreseeable event which would render Black Cat liable under KRS 244.080 and finds *Isaacs v. Smith*, Ky., 5 S.W.3d 500 (1999) to be dispositive as to the issue of foreseeability.

In *Isaacs*, the Kentucky Supreme Court refused to extend liability to the retail liquor establishment despite its violation of KRS 244.080(2) by serving alcoholic beverages to an already intoxicated patron who later shot a third party. The Court held that the shooting of a third party by the intoxicated patron while on the premises was not a foreseeable consequence of violation of the statute.

In *Isaacs*, two nightclub patrons got into an argument which required them to be separated. The nightclub, however, did not ask either of the patrons to leave and continued to serve them alcohol. About 30 minutes later, one of these patrons shot the other in the back. The Court held that this assault was unforeseeable as a matter of law:

[T]he mere violation of a statute does not necessarily create liability unless the statute was specifically intended to prevent the type of occurrence which has taken place. Not all statutory violations result in liability for that violation. The violation must be a substantial factor in

---

**18.** *Id.* at 239.

**19.** *Schooley v. Pinch's Deli Market, Inc.*, 134 Wash.2d 468, 951 P.2d 749, 753–54 (1998); *Reyes v. Kuboyama*, 76 Hawai'i 137, 870 P.2d 1281, 1289–91 (1994); *Danielson v. Johnson*, 366 N.W.2d 309, 313 (Minn.Ct.App.1985); *O'Neale v. Hershoff*, 634 So.2d 644, 646 (Fla. Dist.Ct.App.1993) ("If a vendor sells alcohol to minor A, and there are facts putting the vendor on notice that minor A will furnish the

alcohol to minor B, then the vendor 'sells or furnishes' alcohol to both A and B within the meaning of the statute."); *Thompson v. Victor's Liquor Store, Inc.*, 216 N.J.Super. 202, 523 A.2d 269, 272 (1987); *Mackay v. 7–Eleven Sales Corp.*, 995 P.2d 1233, 1235–36 (Utah 2000); *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61, 73 (W.Va.1990).

**20.** Ky., 5 S.W.3d 500 (1999).

causing the injury and the violation must be one intended to prevent the specific type of occurrence before liability can attach.[21]

The Court in *Isaacs* also stated:

> The issue here is simply whether or not it was foreseeable that Issacs [sic], given his intoxicated condition, could cause injury to a third party as a result of Nite Life's act of continuing to sell him liquor, such as would render the establishment liable to the victim under KRS 244.080. We hold that it does not.[22]
>
> . . .
>
> Our holding in this case is not to be construed as requiring a litigant to prove that the exact manner in which the injury occurred was foreseeable.
>
>> We think it is clear that so far as foreseeability enters into the question of liability for negligence, it is not required that the particular, precise form of injury be foreseeable—it is sufficient if the probability of injury of some kind to persons within the natural range of effect of the alleged negligent act could be foreseen.
>
> *Miller v. Mills,* Ky., 257 S.W.2d 520, 522 (1953)(citing *Morton's Adm'r v. Kentucky–Tennessee L. & P. Co.,* 282 Ky. 174, 138 S.W.2d 345 (1940); *Dixon v. Ky. Utilities Co.,* [ ]295 Ky. 32, 174 S.W.2d 19 (1943)).[23]

The Black Cat's argument that the Supreme Court intended to limit civil liability arising from violations of KRS 244.080 to only cases involving motor vehicle accidents is not supported by the language used in *Isaacs,* and such an interpretation of *Isaacs* would require a conclusion that our Supreme Court went beyond deciding the issue before it. Correctly, the Supreme Court did not address an issue that was not before it, and the issue of foreseeability must be considered on a case-by-case basis. As to foreseeablility, the Supreme Court merely recognized the precedent which had held that under these circumstances arising from the sale of alcohol to a minor that a motor vehicle accident is clearly foreseeable; but then, the Supreme Court held that an intentional assault in a bar between two feuding parties was not foreseeable. The case *sub judice* raises the difficult issue of whether Jonathan's drowning was unforeseeable as a matter of law. We believe reasonable minds could differ as to whether Jonathan's drowning was a foreseeable result from the sale of alcohol to a minor; and therefore, this is a question that is proper for a jury to decide.[24]

As persuasive authority in support of this position, we rely upon a recent Supreme Court case from the state of Washington. In *Schooley, supra,* Schooley was injured after consuming alcohol that was sold by the liquor store to another minor. After purchasing the alcohol from the liquor store, a group of minors played drinking games at the purchaser's house. Schooley was picked up by one of the minors who was going to throw her into a pool. Schooley asked if she could strip down into her bathing suit she had on underneath her clothing, and after doing so she dived into the pool on her own volition. Unfortunately, Schooley dived into the pool where it was only two feet deep and she suffered a spinal cord injury leaving her a quadriplegic. The Washington Court was faced with an issue of first impression and held that Schooley's com-

21. *Id.* at 502.

22. *Id.*

23. *Id.*

24. *Watts, supra* at 239.

plaint stated a claim that should be decided by a jury:

> [R]easonable minds could conclude that a minor purchasing substantial amounts of alcohol would share that alcohol with friends. Thus, it is a question for the jury as to whether under these facts it was foreseeable that the alcohol would be shared with others. Factors that may be considered include, but are not limited to, the amount and character of the beverages purchased, the time of day; the presence of other minors on the premises or in a vehicle, and statements made by the purchaser.[25]

We believe *Schooley* is consistent with established Kentucky case law.

Having held that whether Jonathan's drowning was a foreseeable result of the illegal sale of the alcohol to another minor is a question of fact to be decided by a jury; the summary judgment of the Daviess Circuit Court is reversed and this matter is remanded for further proceedings consistent with this Opinion.

TACKETT, Judge, CONCURS.

BUCKINGHAM, Judge, CONCURS and files separate opinion.

BUCKINGHAM, Judge, CONCURS:

I concur with the majority but desire to state my views separately. Until our Supreme Court's opinion in the *Isaacs* case in 1999, Kentucky appellate courts had frequently held that juries should determine whether injuries which occurred after the consumption of alcoholic beverages was a foreseeable result of an establishment, licensed to sell alcoholic beverages, selling such beverages in violation of KRS 244.080. *See Pike v. George, Grayson Frat. Order of Eagles, Aerie No. 3738, Inc., v. Claywell, Watts v. K, S & H, supra.* However, with the *Isaacs* case, our Supreme Court, in a four-three decision, held that a nightclub's continued sale of alcoholic beverages to an intoxicated patron who had been involved in an altercation with other customers requiring the intervention of club security and who then shot one of those customers was not, as a matter of law, a foreseeable cause of the injured patron's injuries. *Id.* at 503. The Court noted that the injured person would not have been injured "but for Isaacs' intervening act." *Id.*

I think it is important to note that our Supreme Court in the *Isaacs* case relied on the precedent of *Waller's Adm'r. v. Collinsworth,* 144 Ky. 3, 137 S.W. 766 (1911). *Isaacs* at 502. In *Waller's Adm'r.,* the Court held that an injury or death caused by a shooting was not a natural or probable consequence of an illegal sale of alcohol. *Id.* The Court therein noted that "[s]o many elements may enter into a homicide that it is impossible to say it is the natural result of intoxication." *Id.* Clearly, the accidental drowning of a minor after the consumption of alcoholic beverages as in the case *sub judice* differs from the intentional act of homicide.

The *Grayson* case speaks of "a universal duty owed by all to all." *Id.* at 330. It notes that "the rule is that every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Id.* at 332. The question in statutory violation cases is

---

**25.** *Id.* at 754. *See also Mansfield v. Circle K Corporation,* 877 P.2d 1130 (Okl.1994) (allowing a cause of action against the alcohol vendor when minor purchaser dived into a pool at his fraternity house after consuming the alcohol); *Tobin v. Norwood Country Club,* 422 Mass. 126, 661 N.E.2d 627 (Mass.1996) (Reversing the Superior Court and reinstating jury verdicts against the club after a minor who had consumed alcohol at a party at the club was struck by a car while walking down the highway).

"whether the evidence shows that the results of misconduct are reasonably foreseeable." *Grayson* at 334. I believe these questions are generally best left to the common sense of juries. Undoubtedly, a court should from time-to-time step in and award a summary judgment where it was clearly unforeseeable that the violation could have led to the injury. However, my faith in the jury system leads me to believe that reasonable jurors will draw the line in an appropriate place when they decide what was reasonably foreseeable and what was not.

In the case *sub judice,* I concur with the majority and would leave it to the jury to determine whether it was reasonably foreseeable that the sale of alcoholic beverages to a minor, who then shared them with another minor who drowned in a pond later that evening, could lead to the tragic circumstances which resulted herein.