RENDERED: JANUARY 5, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0021-MR

BENJAMIN SHEMWELL,
INDIVIDUALLY, AS CO-
ADMINISTRATOR OF THE ESTATE
OF MARCO LEE SHEMWELL, AND
AS PARENT AND NEXT FRIEND OF
M.G.S., A MINOR; AND ELIZABETH
SHEMWELL, INDIVIDUALLY, AS
CO-ADMINISTRATOR OF THE
ESTATE OF MARCO LEE
SHEMWELL, AND AS PARENT AND
NEXT FRIEND OF M.G.S., A MINOR                     APPELLANTS


                    APPEAL FROM FAYETTE CIRCUIT COURT
v.                  HONORABLE LUCY ANNE VANMETER, JUDGE
                    ACTION NO. 19-CI-03302


ANDREW THOMPSON                                          APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, KAREM, AND LAMBERT, JUDGES.

KAREM, JUDGE: Appellants appeal from the Fayette Circuit Court's orders granting summary judgment in favor of Andrew Thompson regarding Appellants' claims of negligence, negligence *per se*, and loss of sibling consortium. We affirm the circuit court upon review of the record and applicable law.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 15, 2018, a motor vehicle operated by Jacob Heil[1] struck pedestrian Benjamin Shemwell and Shemwell's two sons, M.G.S. and Marco Shemwell, as they were leaving a University of Kentucky football game. While Benjamin and M.G.S. sustained minor injuries, four-year-old Marco was fatally injured and passed away on September 18, 2018. At that time, Heil was a pledge of the Alpha Tau Omega Fraternity (the "Fraternity") at the University of Kentucky.

Following a jury trial, Heil was found guilty of Operating a Motor Vehicle While Under 21 Years of Age With a Blood Alcohol Concentration of .02 or Above. However, the jury found Heil not guilty of Reckless Homicide.

Appellants brought a civil action against the Fraternity, other related entities, and eleven individual members of the Fraternity. Specifically, the Appellants asserted claims against Thompson for negligence, recklessness, negligent infliction of emotional distress, and negligence *per se*. Additionally,

---

[1] Heil is not a party to this case.

Appellants asserted a loss of consortium claim against Thompson on behalf of M.G.S.

Appellants' claims against Thompson were based on their theory that he facilitated the acquisition of large amounts of beer for a tailgating party attended by Heil on the morning of the accident. Appellants allege that Thompson made a "decision to fund, procure, and transport alcohol," part of which Heil consumed at the party.

Thompson contends that his participation was limited to September 14, 2018, the day before the tailgating party and the events resulting in Marco's death. The record indicates that Thompson drove another Fraternity member to a liquor store on September 14, where that member purchased beer for the party. As a Fraternity member, Thompson was one of many members who contributed to a fund used to purchase the beer. While Thompson attended the party the following day, he did not see or interact with Heil. Indeed, from all indications, the two had never met.

Appellants alleged that Heil consumed at least four beers at the Fraternity's tailgating party. The collision occurred approximately two and one-half hours after Heil left the tailgating party. During the time between leaving the party and the collision, Heil traveled to various locations, which included eating

lunch and consuming additional alcohol. As shown by the criminal charge, Heil had a blood alcohol concentration above .02 but less than .08 at the time of testing.

On June 30, 2020, Thompson filed a motion for partial summary judgment seeking dismissal of M.G.S.'s claim for loss of sibling consortium, arguing that Kentucky law does not recognize such a claim. The Fayette Circuit Court granted Thompson's motion on July 29, 2020, and dismissed M.G.S.'s loss of sibling consortium claim.

The parties continued discovery through the remainder of 2020 and into 2022, including taking eleven depositions. By September 2022, Appellants had settled their claims against twelve of the fourteen original defendants, with Thompson being one of the only remaining defendants.

On October 26, 2022, Thompson filed a motion for summary judgment seeking dismissal of all claims against him by Appellants. Generally, Thompson argued that he did not owe a duty to the Appellants; did not furnish alcohol to Heil within the meaning of Kentucky Revised Statute ("KRS") 244.085 and thus could not be held liable for negligence *per se*; was not the proximate cause of Marco's death and other resulting damages claimed by Appellants; and was released from liability by Appellants' settlement with the national fraternity.

Appellants filed a response on November 10, 2022, addressing each of Thompson's arguments and advancing KRS 530.070(1) as a source of Thompson's potential liability for negligence *per se*.

The parties argued the motion on November 18, 2022. On December 5, 2022, the circuit court granted Thompson's motion for summary judgment. The circuit court reasoned that Thompson did not owe the Appellants a duty of reasonable care because there was "no evidentiary basis . . . to conclude Thompson had the ability to control Heil." The court further held that no reasonable juror could find that Thompson's actions were the proximate cause of Marco's death because approximately two and one-half hours lapsed between the tailgating party where Heil consumed alcohol and the fatal collision. Additionally, on December 13, 2022, the court ordered that the prior orders were final and appealable. This appeal followed.

We will discuss further facts as they become relevant.

## ANALYSIS

### a. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule

of Civil Procedure ("CR") 56.03. The Court of Appeals reviews a trial court's decision regarding summary judgment *de novo*. *Baker v. Weinberg*, 266 S.W.3d 827, 831 (Ky. App. 2008). The determination focuses on whether the trial court erred in its conclusion that there were no genuine issues of material fact, and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). "If the summary judgment is sustainable on any basis, it must be affirmed." *Fischer v. Fischer*, 197 S.W.3d 98, 103 (Ky. 2006).

### b. Discussion

### 1. Negligence – Existence of a Duty

Appellants first argue that the circuit court erroneously relied on case law addressing an individual's duty to control the conduct of others instead of examining Thompson's duty stemming from his own conduct. Under Kentucky law, a plaintiff must prove the following to establish a *prima facie* negligence claim: "(1) the defendant owed the [Appellants] a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003) (citations omitted). If the plaintiff cannot prove the defendant owed the plaintiff a duty of care, then the defendant is entitled to judgment as a matter of law. *Id*. at 89

(citations omitted). The existence of a duty of care is a question of law for the court, while breach and injury are questions of fact for the jury. *Id.*

Throughout the years, Kentucky courts have discussed the concept of a "universal duty of care," whereby "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987) (superseded by statute on other grounds).

However, the Kentucky Supreme Court has noted that the concept of a "universal duty of care" "is not boundless." *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 848-49 (Ky. 2005). "What Kentucky courts have recognized through the 'universal duty of care' rule is that the existence of a duty of care is circumstantially limited: the duty is to exercise ordinary care to prevent *foreseeable* harm." *James v. Meow Media, Inc.*, 300 F.3d 683, 690 (6th Cir. 2002) (emphasis in original).

Therefore, "[c]onsideration must . . . be given to whether the harm to the plaintiff resulting [from] the defendant's negligence was foreseeable." *T & M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526, 531 (Ky. 2006). Indeed, "[t]he purpose in referring to a 'universal duty,' . . . was never to define the duty element of actionable negligence. The phrase simply distinguished modern negligence theory from the much narrower archaic legal bases upon which

personal injuries formerly were remedied – contract and trespass." *Jenkins v. Best*, 250 S.W.3d 680, 690 (Ky. App. 2007).

In this case, we agree with the circuit court that the Appellants have not provided sufficient evidence to create a genuine issue of fact as to the existence of a duty of care on Thompson's part. As the circuit court recognized, under Kentucky law, an individual generally has no duty to control the conduct of a third person to prevent him from causing harm to another. *Carneyhan*, 169 S.W.3d at 849. A duty can arise to exercise reasonable care to prevent harm by controlling a third person's conduct where: "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection." *Id.* (internal quotation marks and citations omitted). "The key in each [special relationship] is that ***the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm***." *Id.* at 850 (internal quotation marks and citation omitted) (emphasis added). "Absent such control, there is no special relationship giving rise to a duty of reasonable care." *Id.* at 853.

Here, we agree with the circuit court that no evidentiary basis existed to conclude that Thompson could control Heil or had a "special relationship" with Heil. No evidence in the record demonstrates that Thompson and Heil even knew

each other.  The only connection established by the record was that they were affiliated with the Fraternity.  The alleged responsible party – Thompson – did not supervise Heil on the day of the accident and could not control his behavior. Thompson did not hold an office within the Fraternity, nor was he involved with any Fraternity committees that would have conferred upon him the ability to control Heil's conduct during or after the tailgating party.  Without the ability to control the conduct at the Fraternity's social functions, no special relationship exists that would give rise to a duty.  *Carneyhan*, 169 S.W.3d at 854.  Thus, we see no duty based on any "special relationship" between Thompson and Heil.

Appellants additionally argue that the circuit court failed to consider whether Thompson owed a duty based on his own conduct in transporting beer the day before the tailgating party rather than his ability to control Heil's conduct. Specifically, Appellants argue that the specific harm was foreseeable in this case, citing cases in which commercial stores sold alcohol to minors who were then involved in accidents.  *Priest ex rel. Estate of Priest v. Black Cat, Inc.*, 74 S.W.3d 769 (Ky. App. 2001).

The cited cases, however, only discuss a duty arising on the part of a "retail licensee" or "the licensee's agent, servant, or employee[.]"  KRS 244.080. For example, in *Watts By and Through Watts v. K, S & H*, the court analyzed the question of foreseeability in the context of proximate causation and not duty.  957

S.W.2d 233, 239 (Ky. 1997). *See also Priest*, 74 S.W.3d 769 ("KRS 244.080 . . . does not *per se* impose liability in tort for violation of its terms. But this statute identifies a standard of care imposed upon commercial vendors for the protection of the public … when the factual circumstances are such that the vendor should reasonably foresee what might result."). Thus, we find such cases inapplicable to the current situation.

Appellants additionally cite KRS 530.070 as a basis for a potential duty on Thompson's part. KRS 530.070 applies to social hosts and states that "[a] person is guilty of unlawful transaction with a minor in the third degree when . . . [a]cting other than as a retail licensee, he knowingly sells, gives, purchases or procures any alcoholic or malt beverage in any form to or for a minor."

In the present case, Appellants provided no evidence that Thompson either directly handed an alcoholic beverage to Heil or was authorized to exercise complete control over the direct dispensing of alcohol to the guests. Rather, the evidence indicates that Thompson may have contributed money to a fund to purchase the alcohol and drove alcohol from the store to the location where there was to be a party the next day. He did not hand the alcohol to Heil, whom he had never met. Thus, we affirm the circuit court's decision on this issue.

### 2. **Proximate Cause**

Appellants next claim that the circuit court erred in determining that Thompson's conduct was not a proximate cause of Marco's death as a matter of law. We disagree.

Kentucky courts have held that "[t]o constitute proximate cause, an act must be such that it induced the accident and without which the accident would not have occurred." *Gerebenics v. Gaillard*, 338 S.W.2d 216, 219 (Ky. 1960) (citation omitted). Kentucky courts have also described "proximate cause" as "that which, in a natural and continual sequence, unbroken by any new, independent cause produces the injury, and without which the injury would not have occurred." *Newton v. Wetherby's Adm'x*, 153 S.W.2d 947, 949 (Ky. 1941) (citations omitted). "When the original negligence is remote and only furnishes the occasion of the injury, it is not the proximate cause thereof." *Peak v. Barlow Homes, Inc.*, 765 S.W.2d 577, 579 (Ky. App. 1988) (citation omitted).

In this case, more than two and one-half hours intervened between the tailgating party and the collision. During this period, Heil went to multiple other locations, ate lunch, and consumed additional alcohol. Additionally, Thompson's alleged negligent act – picking the beer up from the store and taking it to the location of the tailgating party – was the day before the collision and thus too remote to constitute the proximate cause of Marco's tragic death. We affirm the

circuit court's determination that no reasonable juror could find Thompson's actions to be the proximate cause of Marco's death.

### 3. **Negligence *Per Se***

Appellants assert that the circuit court erred in dismissing Appellants' negligence *per se* claims against Thompson. To prevail on a claim for negligence *per se*, Appellants must demonstrate that Thompson violated a statute, thereby causing injury to them. *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011). "Failure to comply with the terms of a statute is negligence *per se*. However, in an action for damages, the violation of the statute must be the proximate cause of the injury to permit recovery." *Peak*, 765 S.W.2d at 578 (citations omitted).

Appellants allege that Thompson violated two statutes. The first statute is KRS 244.085(2), which states:

> [a] person under twenty-one (21) years of age shall not possess for personal use or purchase or attempt to purchase or have another purchase for the person any alcoholic beverages. No person *shall aid or assist* any person under twenty-one (21) years of age *in purchasing or being delivered or served* any alcoholic beverages.

(Emphasis added.) Similarly, KRS 530.070(1)(a) prohibits any person from "knowingly sell[ing], giv[ing], purchas[ing] or procur[ing] any alcoholic or malt beverage in any form to or for a minor."

-12-

In this case, we agree with the circuit court that Thompson's action in delivering beer to the tailgating party location the day before the party was too attenuated to fall within a plain reading of either statute. Further, in the previous section, we discussed the lack of proximate cause between Thompson's alleged negligent act and the collision. That analysis applies to negligence *per se* as well. Too much time passed between Thompson's alleged negligence and the injuries, and too many other events intervened. We affirm the circuit court.

### 4. **Sibling Loss of Consortium**

Finally, the Appellants claim that the circuit court erred in dismissing their sibling loss of consortium claim. KRS 411.135 is Kentucky's statute relating to damages in an action for the wrongful death of a minor, and states:

> [i]n a wrongful death action in which the decedent was a minor child, the surviving parent, or parents, may recover for loss of affection and companionship that would have been derived from such child during its minority, in addition to all other elements of the damage usually recoverable in a wrongful death action.

Noticeably, the statutory language does not include siblings. *Id.*

While the Kentucky Supreme Court has recognized a claim by a minor child for the loss of parental consortium, it did so because it found the child's claim to be "reciprocal of the claim of the parents for loss of a child's consortium" and implicated the public policy of parental protection and care for

-13-

their children.  *Giuliani v. Guiler*, 951 S.W.2d 318, 321 (Ky. 1997).  We decline to

read KRS 411.135 as extending to a sibling and therefore affirm the circuit court.

## **CONCLUSION**

For the foregoing reasons, we affirm the Fayette Circuit Court.


ALL CONCUR.



BRIEFS FOR APPELLANTS:          BRIEF FOR APPELLEE:

Brian M. Vines                  Jane C. Higgins
Jonathan B. Fannin              Robert A. Jenkins
Lexington, Kentucky             Lexington, Kentucky